"S"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

U.S. DISTRICT
2018 OCT 12
S.D. OF N.Y.

ANDRZEJ MIODUSZEWSKI

_____

Write the full name of each plaintiff.

_____CV_____
(include case number if one has been assigned)

-against-

POLISH Y SLAVIC FEDERAL
CREDIT UNION
BOARD OF DIRECTORS
See attached for additional deffendet

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

## COMPLAINT

Do you want a jury trial?
☒ Yes   ☐ No

JUDGE RAMOS

# 18 CV 9346

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

**The following PSFCU members are involved in actions against PSFCU Board of Directors and support my claim:**

- Henryk Kwiatkowski  (henrykk@att.net)
- 5905  70th Ave., Ridgewood, NY 11385
-
- Jozef Guzik  (joeguzik@hotmail.com)
  381 Burlington Rd., Paramus, NJ 07652

- Marek Wysocki  (mwysocki@verizon.net)
- 185 Old Tappan Rd., Tappan, NY 10983
-
- Jan Lipski
- 227 Calyer Street, Apt. 4L, Brooklyn, NY 11222
-
- Jan Welenc
- 148 Driggs Avenue, Apt. 1R, Brooklyn, NY 11222

**Below there are the names and addresses of  PSFCU Directors:**

1. Krzysztof Matyszczyk
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

2. Elzbieta Baumgartner
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

3. Malgorzata Gradzki for USD
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

4. Marzena Wierzbowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

5. Iwona Podolak
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

6. Malgorzata Czajkowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

7. Bozena Krajewska-Pielarz
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

- 3 -

8. Malgorzata Wadolowski ✓
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

9. Bogdan Chmielewski (CEO)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

10. Lech Wojtkowski ✓
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

11. Ryszard Bak ✓
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

12. Edward Pierwola ✓
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

13. National Credit Union Administration ✓
    1775 Duke Street, Alexandria, VA 22314-3428

14. POLISH & SLAVIC FEDERAL CREDIT UNION

100 McGuinness BLVD.
BROOKLYN, NY 11222

- 4 -

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☒   Federal Question

☐   Diversity of Citizenship

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

‑FREDOM OF SPEECH

‑THE RIGHT TO VOTE

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____, is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

## A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

ANDRZEJ                          MIODUSZEWSKI
First Name            Middle Initial        Last Name

148 DRIGGS AVENUE, Apt. 1R
Street Address

BROOKLYN              NY              11222
County, City          State              Zip Code

1-917-968-9820        andrzejmioduszewski@gmail.com
Telephone Number      Email Address (if available)

Page 3

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

_See page #4A_

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                        State                    Zip Code

Defendant 2:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                        State                    Zip Code

Defendant 3:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                        State                    Zip Code

Page 4

## Below there are the names and addresses of Defendants:

1. Krzysztof Matyszczyk
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

2. Elzbieta Baumgartner
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

3. Malgorzata Gradzki for USD
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

4. Marzena Wierzbowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

5. Iwona Podolak
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

6. Malgorzata Czajkowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

7. Bozena Krajewska-Pielarz
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

- 3 -

8. Malgorzata Wadolowski
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

9. Bogdan Chmielewski (CEO)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

10. Lech Wojtkowski
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

11. Ryszard Bak
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

12. Edward Pierwola
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

13. National Credit Union Administration
    1775 Duke Street, Alexandria, VA 22314-3428

- 4 A -

**Defendant 4:**

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                           State                 Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _PSFCU 100 McGuinness Blvd, Brooklyn, NY 11222_

Date(s) of occurrence: _2013 - 2018 period of time_

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

On behalf of PSFCU members we accuse Directors, who have performed their social functions as volunteers ( supposedly without payment) for 20 years, of ignoring court judgments, mismanagement, unreasonable spending of thousands of dollars from the member's funds to defend their own positions. Directors made important decisions inconsistent with the Statute of the Credit Union, without consulting members, exposing our financial organization to enormous financial losses. Members were ignored or deliberately misled in making many investment decisions.

Irresponsible Board of Directors for over 5 years fought in the Court against members and finally suffered a defeat, even though they hired the finest Manhattan attorney's company, using PSFCU members' money. Hereby, I ask the High Court on behalf of PSFCU members to order the return of all members' money spent by Board of Directors to cover lawyers' and court fees for the defense of their positions. In accordance with the recommendations of NCUA, such expenses should be covered from their



-5-

own money but not from members' funds.  Unfortunately,  Board of Directors did not publicly disclose how much money they spent on their defense. (We estimate these costs at around USD 500,000). **Therefore, I ask High Court to order  Board of Directors to disclose what losses they have exposed PSFCU members and for the return of the funds used for their defenses to members' accounts.**

At the same time, I am suing NCUA on behalf of PSFCU members, for the lack of control over Board of Directors and ignoring complaints sent by PSFCU members and even by some former executives. NCUA did not even respond to complaints about the use of physical violence against  PSFCU member Jan Welenc during General Meeting at Clark (NJ).

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

RETURN OF PSFCU MEMBERS' MONEY, USED BY PSFCU BOARD OF DIRECTORS FOR THEIR DEFENSE, TO PSFCU MEMBERS ACCOUNTS

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

ESTIMATED AMOUNT TO BE RETURNED USD 500,000.-

Page 6

10/04/2018

UNITED STATES  DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street, Rm # 200
New York, NY 10007

Honourable High Court Judges,

## A court complaint of Polish & Slavic Federal Credit Union members to Federal Court against PSFCU Board of Directors and National Credit Union Administration

I, the undersigned, member of the  Polish & Slavic Federal Credit Union, Andrzej Mioduszewski, am filing a lawsuit to the Federal Court on behalf of Credit Union members against current PSFCU Board of Directors, as well as individually for each of them, and especially against the CEO, who is responsible for the bad financial situation of our Credit Union, as well as against some former directors.

On behalf of PSFCU members we accuse Directors, who have performed their social functions as volunteers ( supposedly without payment) for 20 years, of ignoring court judgments, mismanagement, unreasonable spending of thousands of dollars from the member's funds to defend their own positions. Directors made important decisions inconsistent with the Statute of the Credit Union, without consulting members, exposing our financial organization to enormous financial losses. Members were ignored or deliberately misled in making many investment decisions.

Irresponsible Board of Directors for over 5 years fought in the Court against members and finally suffered a defeat, even though they hired the finest Manhattan attorney's company, using PSFCU members' money. Hereby, I ask the High Court on behalf of PSFCU members to order the return of all members' money spent by Board of Directors to cover lawyers' and court fees for the defense of their positions. In accordance with the recommendations of NCUA, such expenses should be covered from their

- 1 -

own money but not from members' funds.  Unfortunately,  Board of Directors did not publicly disclose how much money they spent on their defense. (We estimate these costs at around USD 500,000). **Therefore, I ask High Court to order  Board of Directors to disclose what losses they have exposed PSFCU members and for the return of the funds used for their defenses to members' accounts.**

At the same time, I am suing NCUA on behalf of PSFCU members, for the lack of control over Board of Directors and ignoring complaints sent by PSFCU members and even by some former executives. NCUA did not even respond to complaints about the use of physical violence against  PSFCU member Jan Welenc during General Meeting at Clark (NJ).

Due to a complaint that he made in the Court, Board of Directors began to scare and harass Jan Welenc, who has been a member of  PSFCU for 30 years and at the request of many members of our Credit Union together with Erik Roszkowski  have defended the rights of members in courts.  Directors even used their lawyer Mr. Cagney, who demanded that he must quit the case in the court against Board of Directors. As a result of this action of the corrupt Board of Directors he suffered damage to his health conditions. That is why he will ask for appropriate financial compensation.

Yours faithfully,

Andrzej Mioduszewski
andrzejmioduszewski@gmail.com
148 Driggs Avenue, Apt. 1R,
Brooklyn, NY 11222
Tel. 1-917-969-9820

Photocopies of the following documents are attached:

- Complaints from PSFCU members, regarding Board of Directors, sent to  NCUA
- Judgment regarding calling of a special meeting of PSFCU members

- 2 -

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|
| ANDRZEJ | | MIODUSZEWSKI |
| First Name | Middle Initial | Last Name |
| 148 DRIGGS AVENUE, Apt. 1R | | |
| Street Address | | |
| BROOKLYN | NY | 11222 |
| County, City | State | Zip Code |
| 1-917-963-8820 | andrzejmioduszewski@gmail.com | |
| Telephone Number | Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

# State of New York
## Court of Appeals

*Decided and Entered on the*
*thirteenth day of September, 2018*

**Present**, Hon. Janet DiFiore, *Chief Judge, presiding.*

---

Mo. No. 2018-649
Jan Welenc et al.,
  Respondents,
   v.
Board of Directors of Polish and Slavic
Federal Credit Union,
  Appellant.

---

  Appellant having moved for leave to appeal to the Court of Appeals in the

above cause;

  Upon the papers filed and due deliberation, it is

  ORDERED, that the motion is denied with one hundred dollars costs and

necessary reproduction disbursements.

             John P. Asiello
             Clerk of the Court



*State of New York*
*Court of Appeals*

*John P. Asiello*
*Chief Clerk and*
*Legal Counsel to the Court*

*Clerk's Office*
*20 Eagle Street*
*Albany, New York 12207-1095*

Decided September 13, 2018

Mo. No. 2018-649

Jan Welenc et al.,
          Respondents,

          v.

Board of Directors of Polish and Slavic Federal
Credit Union,
          Appellant.

Motion for leave to appeal denied with one hundred dollars
costs and necessary reproduction disbursements.

*Kings County Clerk's Index No. 12933/13*
*Appellate Division, Second Department Docket Nos. 2015-10708 and 2016-02293*

# Court of Appeals

### STATE OF NEW YORK

JAN WELENC and IRENEUSZ ROSZKOWSKI, JR., AS
EXECUTOR OF THE ESTATE OF IRENEUSZ ROSZKOWSKI,

*Plaintiffs-Respondents,*

*against*

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

*Defendant-Appellant.*

## OPPOSITION TO MOTION FOR LEAVE TO APPEAL
## TO THE NEW YORK STATE COURT OF APPEALS

**RECEIVED**

JUL - 6 2018

NEW YORK STATE
COURT OF APPEALS

TSEITLIN & GLAS, P.C.
*Attorneys for Plaintiffs-Respondents*
345 7th Avenue, 21st Floor
New York, New York 10001
212-944-7434

*Date Completed: June 21, 2018*

STATE OF NEW YORK
COURT OF APPEALS

-------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI, JR., AS EXECUTOR OF THE ESTATE OF IRENEUSZ ROSZKOWSKI,

                Plaintiffs - Respondents,

-against-

THE BOARD OF DIRECTORS OF POLISH AND SLAVIC FEDERAL CREDIT UNION,

                Defendant - Appellant.

-------------------------------------------------------------X

Appellate Division
Second Department
Docket Nos.: 2015-10708
              2016-02293

(Kings Cty. Index No.: 12933/13)

**<u>AFFIRMATION OF COUNSEL IN OPPOSITION TO MOTION FOR LEAVE TO APPEAL</u>**

EDUARDO J. GLAS affirms, under penalties of perjury pursuant to CPLR 2106, as follows:

1.    I am an attorney duly admitted to practice law in the State of New York, and I am one of the principals at the law firm of Tseitlin & Glas, P.C., attorneys for the plaintiffs-respondents ("Plaintiffs").

2.    I submit this Affirmation in opposition to Defendant/Appellant's, the Board of Directors (the "Board") of the Polish & Slavic Federal Credit Union (the "Credit Union"), Motion for Leave to Appeal to the Court of Appeals pursuant to

CPLR 5602(a)(1)(i), CPLR 5513(b), CPLR 5516, and 22 NYCRR § 670.5 (Rule 670.5) and 22 NYCRR 670.6 (Rule 670.6), from a *unanimous* Decision & Order of the Supreme Court, Appellate Division, Second Judicial Department, entered on April 4, 2018, affirming the Order of the Supreme Court, Trial Term, Kings County (Toussaint, J.) dated February 24, 2016, directing the Board to convene a special meeting of the members of the Credit Union as required by its by-laws after more than 2000 members signed a petition requesting such meeting.

3.     The Board has unsuccessfully attempted to dismiss Plaintiff's demand for a special meeting of members of the Credit Union to expel certain board members and one unelected officer from the Credit Union three times–twice before the Trial Court and once before the Appellate Division.  The Board also filed this very same motion for leave to appeal to this Court before the Appellate Division, which was *unanimously* denied by the panel that heard the appeal.  On this fifth attempt, the Board seeks leave to appeal to this Court on grounds that the Appellate Division's decision was contrary to existing law and thus should be reviewed by this Court.  The Appellate Division's decision, however, was not contrary to existing law.  Since there is no question of law that has arisen that needs to be reviewed by this Court, the present motion should be denied.

4.     The only argument raised in support of the motion is that the Appellate Division's decision did not address the Board's mootness claim. <u>See</u>

2

Affirmation in Support of Motion, ¶ 15.  This argument is farfetched.  The Board made the mootness claim a focal point of its appeal.  It was the first point of its moving brief.  In addition, it was the cornerstone of its presentation at oral argument.  The Appellate Division's decision makes clear that the mootness claim was rejected as having no merit.  See Decision and Order at p. 2 (after noting that the Board failed to establish that the petition to call a special meeting was invalid, and that the Trial Court properly awarded summary judgment in favor of the Plaintiffs, the Court held: "The Board's remaining contentions are either not properly before this Court or without merit.").  As further explained below, the mootness doctrine is inapplicable to the undisputed facts of this case.  The Appellate Division was right in rejecting the argument as lacking merit. Accordingly, there is no point in granting leave to continue an appeal that, at this stage, borders on the frivolous.  The motion should be denied.

5.      The main defect in the Board's claim that the mootness doctrine is applicable because the directorships in the Board were renewed through elections that took place after the filing of this matter is that it ignores *all* the demands made in the petitions (signed by more than two-thousand members of the Credit Union) by focusing just on the removal of certain directors from the Board.  Indeed, the petitions did not just ask for the removal of the targeted individuals from the Board, but sought to expel them as members of the Credit Union as well.  The

3

expulsion of the targeted individuals from the Credit Union is a different form of relief that cannot be mooted by annual elections that only dealt with the filling of positions in the Board. The Board's motion does not dispute this, but wrongly claims, as shown below, that the Plaintiffs can no longer seek the expulsion of the directors. See below ¶¶ 10-13.

6.      In addition, the petition also sought the expulsion of a Supervisory Committee member, an officer who is appointed by the Board and not elected by the members. Still, the by-laws of the Credit Union grant the members the right, through their vote at a special meeting, to remove committee members. (R.88) (By-laws Art. XVI, Section 3). The Supervisory Committee Member targeted is still in office. Consequently, there can be no mootness as to him because elections do not even come into play in connection with such officers. Tellingly, the Board's motion does not even address the issue of the expulsion of the Supervisory Committee member.

7.      The purpose of the special meeting is not to select directors as in regular elections, but to remove (or expel from the Credit Union altogether) those directors and committee members whom the members believe have acted in a manner detrimental to the Credit Union. It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings. See Matter of Auer v. Dressel, 306 N.Y. 427, 430,

4

118 N.E.2d 590 (1954) ("The important right of stockholders to have such [special] meetings will be of little practical value if corporate management can ignore the request"). The normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union. The nominees for the position of directors are selected mostly by the Board, which tends to perpetuate itself. (R. 108). The vote is up or down and takes place before the annual meeting that can be attended by the members. (R. 146-148) (Bylaws, Article V, Section 2). Indeed, at the annual meeting only the *result* of the voting is made public. Id. (Section 2(d)(8)). There is no room for debating allegations of wrongdoing prior to an annual, regular election of directors. (R. 112-113; 232-233; 246-248). The information provided to members prior to regular, annual elections consists only of brief biographical sketches of the candidates. See, e.g. R. 246-248.

8. In contrast, a special meeting seeking to remove an individual provides a forum to air grievances and charges, allowing the challenged individuals an opportunity to defend themselves. (R. 158; 159) (Bylaws, Article XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members present at a special meeting called for that purpose, but only after the member has been given an opportunity to be heard."); and Article XVI, Section 3 ("Notwithstanding any other provision in these bylaws, any director or committee

5

member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for that purpose, but only after an opportunity has been given to be heard.")).  Thus, the special meeting has a purpose and function that cannot be supplanted by regular, annual elections. It is an additional check and balance to the accountability of directors that should not be taken away from the members.

9.      The cases upon which the Board relies do not even address special meetings where the expulsion of members is sought, but the matter is never held to a vote in derogation of the rights of members.  See, e.g., Litas Investing Co. v. Vebeliunas, 148 A.D.2d 680, 539 N.Y.S.2d 429 (2nd Dept. 1989) (president of the company who had been removed from office by the board of directors and enjoined by the court from acting as president was reappointed as president after a regular annual shareholders' meeting was held and changed the composition of the board.  The Second Department held that it was error to deny the president's motion to lift the injunction that had been entered because the elections that took place after the injunction was entered had not been enjoined, were not contested by the plaintiff, and rendered the issues previously raised academic); Grossman et al. v. Katz et al., 195 A.D.2d 462, 600 N.Y.S.2d 130 (2nd Dept. 1993) (proceeding commenced to have an election held.  After commencement of the case, elections were held. Trial court still refused to dismiss the case, even where no opposition

6

had been filed.  Appellate Division held that subsequent elections mooted issues and dismissed the case). The failure to vote on the expulsion of members and on the removal of the unelected officer belies the Board's claim that Second Department's Decision somehow ignored precedent that now needs to be reviewed by the Court of Appeals.

10.    In the present motion, the Board makes an argument that was never presented to the Trial Court or to the Second Department (i.e., the notion that somehow the Trial Court precluded the Plaintiffs from seeking the expulsion from the Credit Union of the targeted individuals).  As such, it should be rejected under the well-established principle that a reviewing court does not hear arguments raised for the first time on appeal. Misicki v. Cardona, 12 N.Y.3d 511, 519, 909 N.E.2d 1213 (New York, 2009).

11.    Even if for the sake of discussion, the Board's new argument on this motion were to be considered, it should be rejected on the merits as well.  First, the Trial Court never ruled that Plaintiff's could not seek the expulsion of the targeted individuals as requested in their Petition.  On the contrary, after discussing the Credit Union by-law provisions allowing members to remove directors and committee members and to expel members from the Credit Union, the Trial Court found the first petition was a valid exercise of the members' rights and directed the Board to call a special meeting to allow a vote on the petition's requests.  Aff. in

7

Support of Motion, Exhibit B, pp. 6-7, 9. In doing so, the Trial Court held that only one item (i.e., the request that sought to elect, on a temporary basis, board members to replace any who were removed) of the petition was improper and did not have to be addressed at the special meeting. The Trial Court never ruled that the expulsion request could not be pursued at the special meeting. Id. at p. 9.

12.     The Board's reliance on footnote six of the Trial Court's decision is misplaced. The footnote reads: "... *to the extent that the Polish translation did not mention that the request also involved the removal from membership* of three of the directors, the court finds that this alleged defect is not material ..." Aff. in Support of Motion, Exhibit B, p. 7 (emphasis added). To infer from this footnote that the Trial Court somehow precluded Plaintiffs from seeking the expulsion of the directors at the special meeting is unwarranted. In fact, the Board ignores the Trial Court's ruling that the translations offered by the Board were inadmissible to prove that the Polish translation included in the petition at stake was inaccurate. Id. at p. 7 ("The Board's assertion that the request is rendered improper because of inconsistencies between the English and Polish versions of the request is not supported by an affidavit from a translator or other evidentiary proof demonstrating that the Polish translation is inaccurate (*see Rosenberg v. Piller*, 116 Ad3d 1023, 1025-1026 [2d Dept 2014]; CPLR 2101 [b]).")). The Appellate Division affirmed this ruling and the Board is not seeking review of this point of

8

law in its application for leave to appeal to this Court. On such record, it cannot be argued, as the Board does now for the first time, that the issue of the expulsion of the directors is no longer in the case.

13.     Second, even if one were to ignore for the sake argument the Trial Court's and the Appellate Division's ruling that the Board's translations cannot be considered at all, the Trial Court's alternative ruling does not help the Board either. The Board's translation highlights only two (Kokoszka and Sawczuk) out of the four directors targeted for whom the Polish version apparently omitted the expulsion request. Kokoszka and Sawczuk are no longer on the board. There is no dispute, even in the Board's translation, that the petition requested the removal from the Credit Union of the two other targeted directors (Baumgartner and Matyszczyk), who still sit on the board to this very day. Thus, based on the Board's own translation, and on the language of the footnote in the Trial Court's opinion (i.e., "…to the extent the Polish translation did not mention the removal…"), there is no reason to exempt Baumgartner and Matyszczyk from facing a removal vote in the special meeting since all translations (even the inadmissible ones presented by the Board) on the record confirmed that the petition sought such action against them.

14.     The Second Department understood that the members' right to call for a special meeting goes beyond their right to vote in annual, regular meetings, and

Supreme Court of the State of New York
Appellate Division: Second Judicial Department

D54957
G/htr

_____AD3d_____

Argued - January 4, 2018

REINALDO E. RIVERA, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
LINDA CHRISTOPHER, JJ.

2015-10708                                                    DECISION & ORDER
2016-02293

Jan Welenc, et al., respondents, v Board of Directors
of Polish and Slavic Federal Credit Union, appellant.

(Index No. 12933/13)

Windels Marx Lane & Mittendorf, LLP, New York, NY (William C. Cagney and
Rodman E. Honecker of counsel), for appellant.

Tseitlin & Glas, P.C., New York, NY (Eduardo J. Glas of counsel), for respondents.

Appeals by the defendant from an amended order of the Supreme Court, Kings
County (Wavny Toussaint, J.), dated June 12, 2015, and an order of the same court dated February
24, 2016. The amended order dated June 12, 2015, insofar as appealed from, denied the defendant's
motion for summary judgment dismissing the complaint and, in effect, searched the record and
awarded summary judgment to the plaintiffs on the complaint. The order dated February 24, 2016,
insofar as appealed from, upon renewal and reargument, adhered to the original determination in the
amended order dated June 12, 2015.

ORDERED that the appeal from the amended order dated June 12, 2015, is dismissed,
as that order was superseded by the order dated February 24, 2016, made upon renewal and
reargument; and it is further,

ORDERED that the order dated February 24, 2016, is affirmed insofar as appealed
from; and it is further,

ORDERED that one bill of costs is awarded to the plaintiffs.

April 4, 2018                                                                    Page 1.
WELENC v BOARD OF DIRECTORS OF POLISH AND SLAVIC
FEDERAL CREDIT UNION

In September 2012, a petition signed by more than 2,000 members of the Polish and Slavic Federal Credit Union (hereinafter the Credit Union) was submitted to the Board of Directors of the Credit Union (hereinafter the Board), requesting that the Board call and hold a special meeting of its membership to, inter alia, put to a vote a motion to remove certain individuals from the Board and an individual from the Supervisory Committee. In October 2012, the Board posted a notice stating that the petition was "determined to be invalid" due to, among other things, "discrepancies" between a version of the petition containing paragraphs written in Polish and an English translation submitted by the Board. In July 2013, the plaintiffs commenced this action "to order Board of Directors to call special meeting of [the Credit Union's] members." Thereafter, the Board cross-moved for summary judgment dismissing the complaint. In an amended order dated June 12, 2015, the Supreme Court, inter alia, denied the Board's motion for summary judgment and, in effect, searched the record and awarded summary judgment to the plaintiffs on the complaint. The Board then moved for leave to renew and reargue its motion for summary judgment. In an order dated February 24, 2016, the court, among other things, upon renewal and reargument, adhered to the original determination in the amended order dated June 12, 2015. The Board appeals from the amended order dated June 12, 2015, and the order dated February 24, 2016.

Contrary to the Board's contention, it failed to establish, prima facie, that the petition to call a special meeting was invalid due to "discrepancies" between a version of the petition containing paragraphs written in Polish and an English translation submitted by the Board, since the English translation was not accompanied by an affidavit by the translator stating the translator's qualifications and that the translation was accurate (*see* CPLR 2101[b]), and thus, did not constitute admissible evidence (*see Rosenberg v Piller*, 116 AD3d 1023, 1025). Since the Board otherwise failed to establish, prima facie, that the petition was invalid, the Supreme Court properly, upon renewal and reargument, adhered to its original determination denying the Board's motion for summary judgment dismissing the complaint and, under the circumstances presented, properly exercised its authority to, in effect, search the record and award summary judgment to the plaintiffs (*see* CPLR 3212[b]).

The Board's remaining contentions are either not properly before this Court or without merit.

RIVERA, J.P., COHEN, MILLER and CHRISTOPHER, JJ., concur.

ENTER:

Aprilanne Agostino
Clerk of the Court

April 4, 2018                                                                                     Page 2.

WELENC v BOARD OF DIRECTORS OF POLISH AND SLAVIC
FEDERAL CREDIT UNION

At an IAS Term, Part 70 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the 12th day
of June, 2015.

P R E S E N T :

HON. WAVNY TOUSSAINT,
                              Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
JAN WELENC AND IRENEUSZ ROSZKOWSKI,                          AMENDED
JR., AS EXECUTOR OF THE ESTATE OF                            ORDER
IRENEUSZ ROSZKOWSKI,

                              Plaintiffs,

    - against -                                             Index No.  12933/13

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following papers numbered 1 to 8 read herein:

                                                            Papers Numbered
Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____           1-2, 3-4, 5, 8

Opposing Affidavits (Affirmations)_____          _____

Reply Affidavits (Affirmations)_____                  6

_____Affidavit (Affirmation)_____        _____

Other Papers  Supplemental Papers in Opposition                   7

        Upon the foregoing papers, plaintiffs Jan Welenc and Ireneusz Roszkowski, Jr., as

Executor of the Estate of Ireneusz Roszkowski,[1] move for an order requiring defendant the

_____

    [1]  The court notes that Ireneusz Roszkowski died during the pendency of this action, and,
by way of an order dated October 29, 2014, the court substituted Ireneusz Roszkowski, Jr., as

Board of Directors of Polish and Slavic Federal Credit Union (Board) to cover any and all future legal expenses incurred in the representation of plaintiffs in their action as against the Board (motion sequence 1). The Board cross moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint (motion sequence 2). Plaintiffs further moved for an order assigning Mark Wysocki, as a plaintiff in this matter, due to the death of Ireneusz Roszkowski (motion sequence 3). By way of a separate motion, plaintiffs move for an earlier hearing date than the original calendar date of the motions (motion sequence 4). An additional motion by plaintiff to among other things add additional material to the record (motion sequence 5), on consent of the defendant, was deemed to be supplemental papers in opposition to defendant's motion for summary judgment dismissing he complaint.

Plaintiffs contend that the Board improperly rejected two separate petitions signed by over 2000 members of the Polish and Slavic Federal Credit Union (Credit Union), requesting that a special meeting of the Credit Union's members be called. As is relevant here, the first petition requested that a special meeting of the Credit Union's membership be called in order to remove four directors from the Board and from their membership in the Credit Union and to remove a supervisory committee person from the Credit Union's supervisory committee. The request for removal was based on allegations of various ethical violations and improper management of the Credit Union's financial affairs. This first petition also requested that,

---

Executor of the Estate of Ireneusz Roszkowski in place of Ireneusz Roszkowski.

because it did not specify a reason for the requested action and declined to hold the requested special meeting.

Plaintiffs, proceeding pro-se, commenced this action in July 2013, requesting that the Board call the special meeting as requested in the petitions. The Board thereafter answered and the parties have since made the instant motions.

Before addressing the parties' motions, the court finds that it has subject matter jurisdiction over the action (*see Financial Indus. Regulatory Auth., Inc. v Fiero*, 10 NY3d 12, 16-17[2008] [issue of a court's subject matter jurisdiction may be raised anytime and may be raised sua sponte]). Although the Credit Union is a federally chartered credit union organized pursuant to the Federal Credit Union Act (12 USCA § 1751, et seq.) (the Act), neither the Act nor the relevant federal regulations grant federal courts or the National Credit Union Administration (NCUA) exclusive jurisdiction over disputes involving member rights under a federal credit union's by-laws (*see Harrington v Philadelphia City Employees Federal Credit Union*, 243 Pa Super 33, 41-42, 364 A2d 435, 439-440 [Pa Super 1976]; *see also Knebel v St. Helens Community Federal Credit Union*, 2013 WL 2243934 [U] [D Or 2013]; *Sly v DFCU Financial Credit Union*, 443 F Supp2d 885 [ED Mich, 2006]). In addition, as the Bylaws serve as a contract between the Credit Union and its members (*Buller v Giorno*, 28 AD3d 258 [1st Dept 2006]; *Matter of American Fibre Chair Seat Corp.*, 241 App Div 532, 535-537 [2d Dept 1934], *affd* 265 NY 416 [1934]; *see also Matter of LaSonde v Seabrook*, 89 AD3d 132, 137 [1st Dept 2011], *lv denied* 18 NY3d 911 [2012]), this court

undoubtedly has subject matter jurisdiction to adjudicate the parties' rights under the Bylaws (see *Matter of American Fibre Chair Seat Corp.*, 241 App Div at 537; *see also Browne v Hibbets*, 290 NY 459, 466-467 [1943]; *Caliendo v McFarland*, 13 Misc 2d 183, 188-[Sup Ct, New York County 1958]).

Turning to the Board's cross motion for summary judgment, the determination of the motion turns on the rights of Credit Union members under the Bylaws. The right of Credit Union members to request a special meeting is addressed in Article IV, section 3 of the By-Laws, which provide that:

> "Special meetings of the members may be called by the chair or the board of directors upon a majority vote, or by the supervisory committee as provided in these bylaws. The chair *must* call a special meeting, meaning a meeting must be held, within 30 days of the receipt of a written request of 25 members or 5% of the members as of the date of the request, whichever number is larger. However, a request of no more than 750 members may be required to call a special meeting.
>
> "The notice of a special meeting must be given as provided in Section 2 of this article. Special meetings may be held at any location permitted for the annual meeting" (emphasis added).

As is relevant to notice, Article IV, Section 2 provides that, "[n]otice of any special meeting must state the purpose for which it is to be held, and no business other than that related to this purpose may be transacted at the meeting." In light of the use of the term "must" call a special meeting upon the receipt of a written request from a sufficient number of members in Article IV, Section 3 of the Bylaws, a chair has no discretion to deny a request for a special meeting made by a sufficient number of members (see *Matter of Auer v Dressel*, 306

NY 427, 431 [1954]; *Kenavan v City of New York*, 177 Misc 2d 647, 651 [Sup Ct, Kings County 1998], *reversed on other grounds* 267 AD2d 353 [2d Dept 1999], *lv denied* 95 NY2d 756 [2000]; *Matter of Friess v Morgenthau*, 86 Misc 2d 852, 854 [Sup Ct, New York County 1975]; *see also M/S Bremen v Zapata Off-Shore Co.*, 407 US 1, 20 [1972]).

Nevertheless, a court will not require a meeting to be held to vote on a request that is improper under the law or the organization's bylaws (*see Caliendo*, 13 Misc 2d at 189-190; NCUA Opinion Letter 06-0326 [March 28, 2006]; *see also Ripin v United States Woven Label Co.*, 205 NY 442 [1912]; 87 CJS, Towns § 47; *cf. Matter of Auer v Dressel*, 306 NY at 432-434).[2] Here, the Bylaws specifically allow the Credit Union members to remove a director or committee member (Bylaws, Article XVI, § 3),[3] and to expel members from the Credit Union (Bylaws, Article XIV, § 1).[4] However, by giving a director sought to be removed or a member sought to be expelled the opportunity to be heard (Bylaws, Article XIV, § 1 and Article XVI, § 3), the Bylaws impliedly require the request for a special meeting to specify the reasons for removal (NCUA Opinion Letter 06-0326 [March 28,

---

[2] The court notes that, although the opinion letter from NCUA does not carry the force of law, it is entitled to deference to the extent that it is persuasive (*see Christensen v Harris*, 529 US 576, 587 [2000]).

[3] Article XVI, section 3 of the Bylaws provides that, "[n]otwithstanding any other provisions in these bylaws, any director or committee member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for the purpose, but only after an opportunity has been given to be heard."

[4] Article XIV, section 1 of the Bylaws, provides, in relevant part, that "[a] member may be expelled by a two-thirds vote of the members present at [a] special meeting called for that purpose, but only after the member has been given the opportunity to be heard."

2006]; NCUA Opinion Letter 98-0950 [Dec. 29, 1998]).  In addition, nothing in the Bylaws suggests that members have the authority to fill the vacancies created by the removal of a director by electing a temporary director at a special meeting.  Rather, under the Bylaws, only the remaining members of the Board have the authority to fill a vacancy with a temporary director (Bylaws, Article VI, § 4).[5]

Applying these considerations to the first petition, the court finds that the portion of the first petition requesting a vote to remove the committee member and four directors based on alleged misconduct states a valid reason for holding a special meeting.  The Board's assertion that the request is rendered improper because of inconsistences between the English and Polish versions of the request is not supported by an affidavit from a translator or other evidentiary proof demonstrating that the Polish translation is inaccurate (*see Rosenberg v Piller*, 116 AD3d 1023, 1025-1026 [2d Dept 2014]; CPLR 2101 [b]).  In any event, the Polish translation, even with the inconsistencies alleged by the Board, is not so different from the English version to be misleading and it adequately conveys the reasons for requesting that the Board call the special meeting to the Polish speaking members signing the petition.[6]  The

---

[5]  Article VI, section 4 of the Bylaws provides, as is relevant, that, "[a]ny vacancy on the board . . . will be filled as soon as possible by a vote of a majority of the directors then holding office.  Directors . . . appointed to fill a vacancy will hold office only until the next annual meeting, at which any unexpired terms will be filled by vote of the members, and until the qualification of their successors."

[6]  The court notes that, to the extent that the Polish translation did not mention that the request also involved the removal from membership of three of the directors, the court finds that this alleged defect is not material because the primary purpose of the request for a special meeting is the removal of the directors from the Board based on improper leadership.

court thus finds that the alleged inconsistencies are not material and that they are insufficient to render the request improper (*see Matter of Rock Church v Milani*, 256 AD2d 255, 256 [1st Dept 1998]).

The court agrees with the Board that the portion of the petition requesting that a vote be held to elect temporary directors to replace the removed directors violates the Bylaws, as that power rests with the remaining board members (Bylaws, Article VI, § 4). Contrary to the Board's assertion, the inclusion of the improper request does not invalidate the entire request for a special meeting (*see Matter of Weisblum v Li Falco Mfg. Co. Inc.*, 193 Misc 473, 478 [Sup Ct, Herkimer County 1947]). To hold that the improper request vitiates the entire request to call a special meeting would constitute a hyper-technical reading of the requirements relating to the requests for special meetings (*see* NCUA Opinion Letter 06-0326 [March 28, 2006]), and improperly impede the important right of members to request the calling of a special meeting (*see Matter of Auer*, 306 NY at 431-433). Even if, as argued by the Board, the requested reasons for holding a special meeting must be analyzed like a contract, the court finds that the request to hold a vote to remove the four board members is severable from and in no way contingent on the request that, upon their removal, the members be allowed to vote on their replacements (*see Hart v City of New York*, 201 NY 45, 57-58 [1911]; *Alderman v Central N.Y. Arterial Mkts.*, 24 AD2d 1046 [3d Dept 1965]; *Anheuser-Busch Ice & Cold Stor. Co., Inc. v Reynolds*, 221 App Div 174, 178 [1st Dept 1927]). As such contractual principles do not require striking the valid requests because of

8

Plaintiffs' motion for a earlier hearing date is denied as academic, as argument has already been held on the motions. Plaintiff's motion to have Mark Wysocki substituted as plaintiff is denied, as moot, in light of the appointment of Ireneusz Roszkowski, as the estates representative, pursuant to an Order of the Surrogates Court, Kings County, dated September 19, 2014. Plaintiff's remaining motion to add additional material was previously resolved on consent.

Accordingly, a special meeting of the members of the Credit Union is to be called for by the Board of Directors and held within sixty (60) days of service of this order with notice of entry.

This constitutes the decision, judgment and order of the court.

ENTER,

_____

J. S. C.

HON. WAVNY TOUSSAINT

· 10

At an IAS Term, Part 70 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the 2nd day of
March, 2015.

P R E S E N T :

HON. WAVNY TOUSSAINT,
                              Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JAN WELENC AND IRENEUSZ ROSZKOWSKI,
JR., AS EXECUTOR OF THE ESTATE OF
IRENEUSZ ROSZKOWSKI,

                    Plaintiffs,

          - against -                              Index No.  12933/13

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

The following papers numbered 1 to 8 read herein:

| | Papers Numbered |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed_____ | 1-2, 3-4, 5, 8 |
| Opposing Affidavits (Affirmations)_____ | |
| Reply Affidavits (Affirmations)_____ | 6 |
| _____Affidavit (Affirmation)_____ | |
| Other Papers__Supplemental Papers in Opposition_____ | 7 |

          Upon the foregoing papers, plaintiffs Jan Welenc and Ireneusz Roszkowski, Jr., as

Executor of the Estate of Ireneusz Roszkowski,[1] move for an order requiring defendant the

_____

[1] The court notes that Ireneusz Roszkowski died during the pendency of this action, and,
by way of an order dated October 29, 2014, the court substituted Ireneusz Roszkowski, Jr., as

Board of Directors of Polish and Slavic Federal Credit Union (Board) to cover any and all future legal expenses incurred in the representation of plaintiffs in their action as against the Board (motion sequence 1). The Board cross moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint (motion sequence 2). Plaintiffs further moved for an order assigning Mark Wysocki, as a plaintiff in this matter, due to the death of Ireneusz Roszkowski (motion sequence 3). By way of a separate motion, plaintiffs move for an earlier hearing date than the original calendar date of the motions (motion sequence 4). An additional motion by plaintiff to among other things add additional material to the record (motion sequence 5), on consent of the defendant, was deemed to be supplemental papers in opposition to defendant's motion for summary judgment dismissing he complaint.

Plaintiffs contend that the Board improperly rejected two separate petitions signed by over 2000 members of the Polish and Slavic Federal Credit Union (Credit Union), requesting that a special meeting of the Credit Union's members be called. As is relevant here, the first petition requested that a special meeting of the Credit Union's membership be called in order to remove four directors from the Board and from their membership in the Credit Union and to remove a supervisory committee person from the Credit Union's supervisory committee. The request for removal was based on allegations of various ethical violations and improper management of the Credit Union's financial affairs. This first petition also requested that,

---

Executor of the Estate of Ireneusz Roszkowski in place of Ireneusz Roszkowski.

at the special meeting, the members vote on temporary directors to fill the vacancies caused by the removal.

In an October 9, 2012 notice, the Board acknowledged the receipt of the petition, and acknowledged that it contained 974 valid signatures and that these signatures constituted a sufficient number of signatures to call a special meeting under the Credit Union's Bylaws (Bylaws) as they existed at the time. Nevertheless, the Board declined to call a special meeting, asserting that the petition was invalid because: (1) the portion of the petition requesting that an election be held at the special meeting to replace the removed board members violated the Bylaws; (2) this defect with the petition invalidated the entire petition, including the portion of the petition requesting the removal of the five directors; and (3) the portion of the petition requesting the removal of the remaining board members was also invalid because of inconsistencies between the Polish and English translations of the grounds for removal.

In the second petition, plaintiffs requested a special meeting be held to vote on the removal of the four directors and the supervisory committee person who were subject to the request in the first petition, as well as the removal of two additional directors. Unlike the first petition, the second petition only requested that a removal vote be held, but did not outline the grounds for removal or request that a vote also be held to fill the vacancies. The Board, in a notice dated February 1, 2013, stated that it found the second petition invalid

because it did not specify a reason for the requested action and declined to hold the requested special meeting.

Plaintiffs, proceeding pro-se, commenced this action in July 2013, requesting that the Board call the special meeting as requested in the petitions. The Board thereafter answered and the parties have since made the instant motions.

Before addressing the parties' motions, the court finds that it has subject matter jurisdiction over the action (*see Financial Indus. Regulatory Auth., Inc. v Fiero*, 10 NY3d 12, 16-17[2008] [issue of a court's subject matter jurisdiction may be raised anytime and may be raised sua sponte]). Although the Credit Union is a federally chartered credit union organized pursuant to the Federal Credit Union Act (12 USCA § 1751, et seq.) (the Act), neither the Act nor the relevant federal regulations grant federal courts or the National Credit Union Administration (NCUA) exclusive jurisdiction over disputes involving member rights under a federal credit union's by-laws (*see Harrington v Philadelphia City Employees Federal Credit Union*, 243 Pa Super 33, 41-42, 364 A2d 435, 439-440 [Pa Super 1976]; *see also Knebel v St. Helens Community Federal Credit Union*, 2013 WL 2243934 [U] [D Or 2013]; *Sly v DFCU Financial Credit Union*, 443 F Supp2d 885 [ED Mich, 2006]). In addition, as the Bylaws serve as a contract between the Credit Union and its members (*Buller v Giorno*, 28 AD3d 258[1st Dept 2006]; *Matter of American Fibre Chair Seat Corp.*, 241 App Div 532, 535-537 [2d Dept 1934], *affd* 265 NY 416 [1934]; *see also Matter of LaSonde v Seabrook*, 89 AD3d 132, 137 [1st Dept 2011], *lv denied* 18 NY3d 911 [2012]), this court

undoubtedly has subject matter jurisdiction to adjudicate the parties' rights under the Bylaws (*see Matter of American Fibre Chair Seat Corp.*, 241 App Div at 537; *see also Browne v Hibbets*, 290 NY 459, 466-467 [1943]; *Caliendo v McFarland*, 13 Misc 2d 183, 188 [Sup Ct, New York County 1958]).

Turning to the Board's cross motion for summary judgment, the determination of the motion turns on the rights of Credit Union members under the Bylaws. The right of Credit Union members to request a special meeting is addressed in Article IV, section 3 of the By-Laws, which provide that:

> "Special meetings of the members may be called by the chair or the board of directors upon a majority vote, or by the supervisory committee as provided in these bylaws. The chair *must* call a special meeting, meaning a meeting must be held, within 30 days of the receipt of a written request of 25 members or 5% of the members as of the date of the request, whichever number is larger. However, a request of no more than 750 members may be required to call a special meeting.

> "The notice of a special meeting must be given as provided in Section 2 of this article. Special meetings may be held at any location permitted for the annual meeting" (emphasis added).

As is relevant to notice, Article IV, Section 2 provides that, "[n]otice of any special meeting must state the purpose for which it is to be held, and no business other than that related to this purpose may be transacted at the meeting." In light of the use of the term "must" call a special meeting upon the receipt of a written request from a sufficient number of members in Article IV, Section 3 of the Bylaws, a chair has no discretion to deny a request for a special meeting made by a sufficient number of members (*see Matter of Auer v Dressel*, 306

NY 427, 431 [1954]; *Kenavan v City of New York*, 177 Misc 2d 647, 651 [Sup Ct, Kings County 1998], *reversed on other grounds* 267 AD2d 353 [2d Dept 1999], *lv denied* 95 NY2d 756 [2000]; *Matter of Friess v Morgenthau*, 86 Misc 2d 852, 854 [Sup Ct, New York County 1975]; *see also M/S Bremen v Zapata Off-Shore Co.*, 407 US 1, 20 [1972]).

Nevertheless, a court will not require a meeting to be held to vote on a request that is improper under the law or the organization's bylaws (*see Caliendo*, 13 Misc 2d at 189-190; NCUA Opinion Letter 06-0326 [March 28, 2006]; *see also Ripin v United States Woven Label Co.*, 205 NY 442 [1912]; 87 CJS, Towns § 47; *cf. Matter of Auer v Dressel*, 306 NY at 432-434).[2] Here, the Bylaws specifically allow the Credit Union members to remove a director or committee member (Bylaws, Article XVI, § 3),[3] and to expel members from the Credit Union (Bylaws, Article XIV, § 1).[4]  However, by giving a director sought to be removed or a member sought to be expelled the opportunity to be heard (Bylaws, Article XIV, § 1 and Article XVI, § 3), the Bylaws impliedly require the request for a special meeting to specify the reasons for removal (NCUA Opinion Letter 06-0326 [March 28,

---

[2] The court notes that, although the opinion letter from NCUA does not carry the force of law, it is entitled to deference to the extent that it is persuasive (*see Christensen v Harris*, 529 US 576, 587 [2000]).

[3] Article XVI, section 3 of the Bylaws provides that, "[n]otwithstanding any other provisions in these bylaws, any director or committee member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for the purpose, but only after an opportunity has been given to be heard."

[4] Article XIV, section 1 of the Bylaws, provides, in relevant part, that "[a] member may be expelled by a two-thirds vote of the members present at [a] special meeting called for that purpose, but only after the member has been given the opportunity to be heard."

2006]; NCUA Opinion Letter 98-0950 [Dec. 29, 1998]).  In addition, nothing in the Bylaws suggests that members have the authority to fill the vacancies created by the removal of a director by electing a temporary director at a special meeting.  Rather, under the Bylaws, only the remaining members of the Board have the authority to fill a vacancy with a temporary director (Bylaws, Article VI, § 4).[5]

Applying these considerations to the first petition, the court finds that the portion of the first petition requesting a vote to remove the committee member and four directors based on alleged misconduct states a valid reason for holding a special meeting.  The Board's assertion that the request is rendered improper because of inconsistences between the English and Polish versions of the request is not supported by an affidavit from a translator or other evidentiary proof demonstrating that the Polish translation is inaccurate (see *Rosenberg v Piller*, 116 AD3d 1023, 1025-1026 [2d Dept 2014]; CPLR 2101 [b]).  In any event, the Polish translation, even with the inconsistencies alleged by the Board, is not so different from the English version to be misleading and it adequately conveys the reasons for requesting that the Board call the special meeting to the Polish speaking members signing the petition.[6] The

---

[5] Article VI, section 4 of the Bylaws provides, as is relevant, that, "[a]ny vacancy on the board . . . will be filled as soon as possible by a vote of a majority of the directors then holding office.  Directors . . . appointed to fill a vacancy will hold office only until the next annual meeting, at which any unexpired terms will be filled by vote of the members, and until the qualification of their successors."

[6] The court notes that, to the extent that the Polish translation did not mention that the request also involved the removal from membership of three of the directors, the court finds that this alleged defect is not material because the primary purpose of the request for a special meeting is the removal of the directors from the Board based on improper leadership.

7

court thus finds that the alleged inconsistencies are not material and that they are insufficient to render the request improper (*see Matter of Rock Church v Milani*, 256 AD2d 255, 256 [1st Dept 1998]).

The court agrees with the Board that the portion of the petition requesting that a vote be held to elect temporary directors to replace the removed directors violates the Bylaws, as that power rests with the remaining board members (Bylaws, Article VI, § 4). Contrary to the Board's assertion, the inclusion of the improper request does not invalidate the entire request for a special meeting (*see Matter of Weisblum v Li Falco Mfg. Co. Inc.*, 193 Misc 473, 478 [Sup Ct, Herkimer County 1947]). To hold that the improper request vitiates the entire request to call a special meeting would constitute a hyper-technical reading of the requirements relating to the requests for special meetings (*see NCUA Opinion Letter 06-0326 [March 28, 2006]*), and improperly impede the important right of members to request the calling of a special meeting (*see Matter of Auer*, 306 NY at 431-433). Even if, as argued by the Board, the requested reasons for holding a special meeting must be analyzed like a contract, the court finds that the request to hold a vote to remove the four board members is severable from and in no way contingent on the request that, upon their removal, the members be allowed to vote on their replacements (*see Hart v City of New York*, 201 NY 45, 57-58 [1911]; *Alderman v Central N.Y. Arterial Mkts.*, 24 AD2d 1046 [3d Dept 1965]; *Anheuser-Busch Ice & Cold Stor. Co., Inc. v Reynolds*, 221 App Div 174, 178 [1st Dept 1927]). As such contractual principles do not require striking the valid requests because of

the invalid request. Therefore, the Board was required to call a special meeting based on the first petition.

The Board's motion for summary judgment, as it relates to the plaintiff's first petition is denied. The Board should have called a special meeting, relative to the first petition submitted by the plaintiff's. That portion of the petition which seeks to temporarily elect board members to replace any that are removed is improper and need not be addressed at the special meeting. The Court directs that a special meeting of the Board of Directors be held within sixty (60) days of service of this order with notice of entry.

The court finds that the Board was not required to call a special meeting based on the second petition, in that the second petition failed to identify the grounds for removing the directors from the Board (Bylaws, Article XVI, § 3; NCUA Opinion Letter 06-0326 [March 28, 2006]; NCUA Opinion Letter 98-0950 [Dec. 29, 1998]). Accordingly, the Board's motion for summary judgment as it relates to the second petition only, is granted.

Plaintiffs' motion requesting that the Board be required to cover plaintiffs' attorneys' fees must be denied, as plaintiffs have failed to identify a contractual or statutory basis for the recovery of such fees (*see Gorman v Fowkes*, 97 AD3d 726, 727 [2d Dept 2012]; *Blair v O'Donnell*, 85 AD3d 954, 956 [2d Dept 2011]; *Reilly Mrtg. Group Inc. v Mount Vernon Sav. & Loan Assn.*, 568 F Supp 1067, 1078-1079 [DC Va 1983] [addressing an attorney fee request by stockholders moving to compel a special meeting]).

Plaintiffs' motion for a earlier hearing date is denied as academic,  as argument has already been held on the motions.  Plaintiff's motion to have Mark Wysocki substituted as plaintiff is denied, as moot, in light of the appointment of Ireneusz Roszkowski, as the estates representative, pursuant to an Order of the Surrogates Court, Kings County, dated September 19, 2014. Plaintiff's remaining motion to add additional material was previously resolved on consent.

Accordingly, a special meeting of the Board of Directors is to be held within sixty (60) days of service of this order with notice of entry.

This constitutes the decision, judgment and order of the court.

E N T E R,

J. S. C.

HON. WAVNY TOUSSAINT

10

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
-------------------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI, JR.,
AS EXECUTOR OF THE ESTATE OF IRENEUSZ
ROSZKOWSKI,

Index No.: 2015-10708
(Kings Cty Index No.: 12933/13)

Plaintiffs - Respondents,

-against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

Defendant - Appellant.

-------------------------------------------------------------------------X

---

## PLAINTIFFS/RESPONDENTS' MEMORANDUM IN OPPOSTION TO ORDER TO SHOW CAUSE FOR STAY PENDING APPEAL

---

TSEITLIN & GLAS, P.C.
345 Seventh Avenue, 21st Floor
New York, New York 10001
(646) 833-1639
Attorneys for Plaintiffs/Respondents

Of Counsel
  Eduardo J. Glas

On the Brief
  Eduardo J. Glas

## PRELIMINARY STATEMENT

This matter involves a Board of Directors of the Polish and Slavic Credit Union (the "Credit Union") that refuses to abide by its by-laws in derogation of the rights of the Credit Union members to call for a special meeting to vote on the removal of certain members from the Board and from the Credit Union altogether.

A petition signed by more than two thousand members of the Credit Union was presented to the Board, complying with the procedure in the bylaws for calling a special meeting of members to seek the removal of certain directors and officers from the Board and from the Credit Union membership for wrongdoing.  The Board rejected the petition on grounds that it included some translation discrepancies between its English and Polish versions, and the claim that a request calling for the members to vote for interim replacement directors of any of the ousted directors vitiated the whole petition because the bylaws did not grant such vote to the members but to the directors.

The matter below was initiated by two members of the Credit Union who have been representing themselves pro-se until this past few weeks when they decided to retain counsel.[1] In March 2015, the trial Court (Judge Toussaint) granted summary judgment in favor of the members and against the Board (the "March Order").  In brief, Judge Toussaint found that the Board's arguments for refusing to call a special meeting of members were invalid.

Still, the Board refused to act due to a clerical mistake in the March Order that directed the convocation of a Board of Directors' meeting rather than a special meeting of members.

---

[1] Tseitlin & Glas was retained as counsel to the Plaintiffs a few days prior to the February 24, 2016, hearing on the defendant's motion for reargument.

Upon the correction of the clerical mistake in June 2015, the Board again refused to act, under the thin excuse that the pro-se plaintiffs did not file a notice of entry until September 2015. Shortly thereafter, the Board filed a motion for reconsideration and renewal of its summary judgment motion.  In February 2016, Judge Toussaint reaffirmed her decision, and denied the Board's request to stay her order calling for a special meeting within 60 days of entry.  Now, by Order to Show Cause, the Board reargues its request for a stay before this Court.  As shown herein, the request for a stay pending appeal should be denied because, among other things, the appeal has no merit and has been filed simply to delay the inevitable.

## LEGAL ARGUMENT

### THE REQUEST FOR A STAY SHOULD BE DENIED
### BECAUSE THE APPEAL IS UNMERITORIOUS AND
### THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFF

The Board moves for a stay pending appeal pursuant to CPLR 5519(c) of the Order of

Judge Toussaint directing the convocation of a special meeting.  It is well established that the

grant of a stay under CPLR 5519(c) is discretionary.   CPLR 5519(c) ("The court from or to

which an appeal is taken… *may* stay all proceedings to enforce the judgment or order appealed

from pending an appeal…") (emphasis added)).  In exercising this discretion, courts may

consider any relevant factor, including the presumptive merits of the appeal and any exigency or

hardship confronting any party.  Siegel, Practice Commentaries (McKinney's Cons Laws of NY,

Book 7B, CPLR § 5519(c)).  Stay pending appeals have been denied when the court believes that

the appeal has a dilatory motivation.  See Application of Mott, 123 N.Y.S.2d 603, 608 (Supreme

Court, Oswego Cty., 1953).  Here, the Court should deny the stay because, as shown below, the

appeal has no likelihood of success, the balancing of the hardships to the parties favors the

Plaintiffs, and the appeal has a dilatory motivation.

1.    The Appeal Has No Merit

The Board's arguments in support of its appeal are that elections that took place after this

action was filed have rendered the appeal moot and that the discrepancies in the petition's Polish

and English version that were submitted to the signatories of the document somehow prevents a

determination of the exact charges being levied against the challenged individuals.  See Aff. of

William C. Cagney in Support of Order to Show Cause for Stay Pending Appeal (the "Cagney

Aff."), pp. 3 and 8.  These arguments were thoroughly considered by Judge Toussaint and were

properly rejected.  See Order entered on February 24, 2016.  This Court should also deny the request for a stay pending appeal.

    a.  The Claim of Mootness Should be Rejected

The Board claims that it will prevail on appeal because the issues in this lawsuits were mooted by the subsequent elections that took place.  Judge Toussaint correctly rejected this argument, noting that the issue addressed by the petitions in seeking a special meeting was to challenge the conduct of the directors/officers who were still in office to this very day.  See Order dated February 24, 2016 (Cagney Aff., Exhibit L).

Significantly, the elections that have taken place in the interim did not address the conduct of the directors.  Regular elections have no mechanism to present charges and to allow for defenses of such charges at a meeting.  Certainly, the bylaws do not contemplate such procedures within the annual meetings.  See Bylaws, Article IV, Section 4, and Article V (Cagney Aff., Exhibit A). That is why the bylaws provide for special meetings for the specific purpose of dealing with the removal of directors from the Board and from members from the Credit Union.  See Bylaws, Article XIV, Section 1, and Article XVI, Section 3.  The challenged individuals have not had to respond to any charges in the elections that have taken place.  To allow them a free pass due to their successful delay tactics would be a mockery of the rights of the members to subject them to recall through special meetings.  The Court should not allow this.

The cases cited by the Board in support of its mootness argument are factually and legally distinguishable.  First, most of those cases, if not all, dealt with procedural challenges to elections that became moot simply by the holding of subsequent elections.  See, e.g., Frascati v. Irondequoit Nightstick Club, Inc., 101 A.D.3d 1602, 956 N.Y.S.2d 371 (4th Dept. 2012) (proceeding commenced on grounds that election had not been held in accordance with the

club's bylaws); <u>Karakonstadakis v. Kokonas</u>, 173 A.D.2d 706 (2nd Dept. 1991) (proceeding commenced on grounds that election had not taken place according to the bylaws); <u>Grossman et al. v. Katz et al.</u>, 195 A.D.2d 462, 600 N.Y.S.2d 130 (2nd Dept. 1993) (proceeding commenced to have an election held.  After commencement of the case, elections were held.  Trial court still refused to dismiss the caser, even where no opposition had been filed.  Appellate Division held that subsequent elections mooted issues and dismissed the case).

The issues in this case are not procedural challenges to elections or demands for regular or normal elections.  The purpose of the special meeting is not to select directors as in regular elections, but to remove those directors whom the members believe have acted in a manner detrimental to the Credit Union.  It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings.  As mentioned above, normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union.  The nominees for the position of directors are selected mostly by the Board.[2]  The vote is up or down, and takes place before the annual meeting that can be attended by the members.  <u>See</u> Bylaws, Article V, Section 2 (Election Procedures).  Indeed, at the annual meeting only the *result* of the voting is made public.  <u>Id.</u> Section 2(d)(8).  There is no room for debating allegations of wrongdoing prior to an annual, regular election of directors.  In contrast, a special meeting seeking to remove an individual is designed to act as a tribunal where charges are presented and the challenged individual is afforded an opportunity to defend himself or herself.  Bylaws, Article XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members present at a special meeting called for that purpose, but only after the member has

---

[2] Attached to the accompanying affirmation of Eduardo J. Glas (the "Glas Aff.") as Exhibit 1 is a copy of a notice for the upcoming annual meeting of the Credit Union with the information provided to members for the election of members to the Board.

been given an opportunity to be heard."); and Article XVI, Section 3 ("Notwithstanding any other provision in these bylaws, any director or committee member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for that purpose, but only after an opportunity has been given to be heard."). Thus, the special meeting has a purpose and function that cannot be supplanted by regular, annual elections. It is an additional check and balance to the accountability of directors that should not be taken away from the members. Accordingly, the subsequent elections could not have possibly mooted the issues in this case, especially as the Board itself admits, a number of the same challenged directors still remains entrenched in office without having had to face any of the charges leveled against them for the past three years.[3]

Equally important, the petition did not just ask for the removal of the targeted individuals from the Board but also as members of the Credit Union. This is a different form of relief that cannot be moot under any circumstance. The bylaws of the Credit Union gave members this right and the petition at issue here requested it. See bylaws, Article XIV, Section 1. The Board attempts to confuse the issues with respect to the request for removal from the Credit Union by claiming discrepancies between the Polish and English version of the petition. However, even in the Board's uncertified translation there is no doubt that the petition requested the removal from the Credit Union of the following individuals: Baumgartner, Matyszczyk, who are still Board members. See Cagney Aff., Exhibit C (Aff. of A. Poslednik, Exhibit C (items 2 and 4). Accordingly, there can be no mootness.

---

[3] Indeed, K. Matyszczyk, one of the directors challenged in the petition, is up for reelection without having to face any of the charges in the petition. See Glas Aff., Exhibit 1.

b.  There is No Conflicting Petition Language

It is ironic that after filing for summary judgment, the Board now thinks that there were issues of fact that should have prevented Judge Toussaint from entering summary judgment in favor of the Plaintiffs.  Judge Toussaint properly review all the record before her, and determined that there were no issues of fact and that the legal arguments that arose from the undisputed facts required the granting of summary judgment in favor of the Plaintiff.

First, Judge Toussaint found that the petition stated valid reasons for the removal of the directors.  The board's attempt to undermine such finding by nitpicking on word choices is to no avail.  Judge Toussaint understood that the Plaintiffs, the promoters of the petition, were not sophisticated lawyers who could parse the meaning of words beyond the understanding of lay folks.

Second, Judge Toussaint found that it was the Board's burden to present evidence in admissible form that the petition offered an inaccurate English translation on its face.  That had been the original excuse of the Board for rejecting the petition prior to the commencement of this action.[4]  As one of its main defenses, the Board should have presented the Court a certified translation in admissible form pursuant to CPLR 2101(b).  Yet, it failed to do so.  See Order at p. 7 (Cagney Aff., Exhibit H).  As a result, there was nothing to support the Board's argument, and the Court properly rejected it.  Id. at pp. 7-8.  On reargument and renewal, the Board again relied on an affidavit of the same vicepresident of the Credit Union that presented the Board's translation to the Court in its motion for summary judgment.  Cagney Aff., Exhibit C.  The second affidavit of this officer stated:

---

[4] Interestingly, it appears that certain members in control of the Board never intended to call the special meeting under any circumstance and concocted reasons to reject the petitions.  See Affirmation of Eduardo J. Glas, Exhibit 2.

> Exhibit C [to my first affidavit] was an English translation, prepared by PSFCU, of the First Petition language, with translation differences highlighted for the Court.  I, together with Joanna Adamska, PSCFU Vice President of Compliance, and Mariusz Moryl, a certified translator and PSFCU Marketing Manager, prepared the translation document for the Court.

The second affidavit still did not comply with CPLR 2101(b), which requires an affidavit by the translator stating "his qualifications and that the translation is accurate." See CPLR 2101(b). Moreover, the reference to the work of a certified translator n the passage from the affidavit cited above is hearsay and, therefore, inadmissible as evidence in support of the Board's argument. See, Friends of Animals, Inc. v. Associated Fur Mfrs. Inc., 46 NY2d 1065, 1067, 416 NYS2d 790 (New York, 1979) (in order to be entitled to summary judgment, a movant must tender evidentiary proof in admissible form).

Judge Toussaint would have been justified in rejecting the Board's argument simply on its failure to tender admissible evidence.  As an alternative finding, however, she ruled that the translation "even with the inconsistencies alleged by the Board, is not so different from the English version to be misleading and it adequately conveys the reasons for requesting that the Board call the special meeting.... The court thus finds that the alleged inconsistencies are not material and that they are insufficient to render the request improper." Order at p. 8.

In short, there were no factual issues.  Judge Toussaint in effect accepted the inadmissible Board's translation and decided, as a matter of law, that the alleged inconsistencies were not material.  The argument that the Board's procedural rights were somehow curtailed because it was denied the opportunity for discovery of the signers of the petition on their understanding of the words in the document is another demonstration that the Board only seeks to delay this proceeding.

2.    The Balance of the Hardships Favors Plaintiffs

The balance of the hardships favors the Plaintiffs in this case. Plaintiffs, together with the members who signed the petition, have been clamoring for a special meeting for years. They have begged the Court to enter an Order so directing after the Board concocted technical "reasons" for rejecting the petition. Even after such orders were entered, the Board took advantage of Plaintiffs' ignorance of procedural rules to further stretch the time before the calling of the meeting. To claim, as the Board does in its application, that further delay would not be unfair to the Plaintiffs because they have been waiting since September 2012 is the epitome of hypocrisy. Fairness demands that this Court not impose further delays. Judge Toussaint understood this and denied the request for a stay pending appeal. This Court should do the same. See, e.g., Application of Kaminsky, 253 A.D. 925 (4th Dep't. 1938) (denying motion for a stay pending appeal of an order directing the election church officials).

There is no unfairness to the challenged members. They will have the opportunity to defend themselves before their peers who will ultimately decide whether the charges are meritorious or not. If they think that the charges level against them are somewhat unclear, they may make that part of their defense at the special meeting. Their rights are under no circumstance being jeopardized. On the contrary, the rights of the 2000 or so petitioners, who thought that the individual challenged in the petition should respond to the members, are being denied. Unlike the union members in Cavanagh v. Hutchenson, 232 A.D. 470, 471 (1st Dept. 1931), a case on which the Board relies, the challenged individuals here serve on the Board for no compensation. Their livelihood is not at stake. Moreover, it is unclear why the individuals could not be reinstated if they are ousted and their appeal is successful since any directors that the Board would appoint to replace them would be serving on an interim basis anyway. Bylaws,

Art. IV, Section 4.  Certainly, nothing would prevent reinstatement as members of the Credit Union should they be expelled and then prevail on appeal.

The Board also indicates that the cost of a special meeting will be $86,337.  There is nothing in the form of admissible evidence to support this amount.  The affidavit so-stating is conclusory and presents no evidence of any estimates or proposals submitted by vendors to justify such amount.  Moreover, the legal fees spent so far plus those to be spent prosecuting the appeal will certainly surpass whatever costs may be incurred in convening the special meeting.

## CONCLUSION

Given that the Board has no likelihood of success on its appeal and that the balancing of the equities favors the Plaintiffs, there is no reason to grant a stay pending appeal in this matter, especially since the Board has demonstrated before and after the litigation commenced that its goal is simply to delay and frustrate the memberships' rights in connection with the convocation of a special meeting.

Dated:  March 7, 2016

By: _____
Eduardo J. Glas

Odwolawczy Apellacja Przegrana

II Instancja Sąder

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
--------------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI, JR.,
AS EXECUTOR OF THE ESTATE OF IRENEUSZ
ROSZKOWSKI,

                     Plaintiffs - Respondents,

      -against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

               Defendant - Appellant.

--------------------------------------------------------------------X

Index Nos.: 2015-10708
              2016-02293

(Kings Cty. Index No.: 12933/13)

**AFFIRMATION OF SERVICE**

      EDUARDO J. GLAS, and attorney duly licensed to practice before the Court of this

State, affirms under penalties of perjury pursuant to CPLR 2106 as follows:

    1.     On May 10, 2018, I caused to be served two true copies of the Affirmation in

Opposition to Motion for Leave to Appeal to Court of Appeals via regular mail delivery to

counsel for defendant-appellant below by depositing the same in a first class, postage paid,

properly addressed wrapper in an official depository under the exclusive care and control of the

United States Postal Service pursuant to CPLR 2103(b)(2) at the following address:

William C. Cagney, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019

Dated: May 10, 2018

                                   Eduardo J. Glas

1

this Court or without merit."). As further explained below, the mootness doctrine is inapplicable to the undisputed facts of this case. The Court was right in rejecting the argument as lacking merit. Accordingly, there is no point in granting leave to continue an appeal that, at this stage, borders on the frivolous. The motion should be denied.

5.     The main defect in the Board's claim that the mootness doctrine is applicable because the directorships in the Board were renewed through elections that took place after the filing of this matter is that it ignores *all* the demands made in the petitions signed by more than two-thousand members of the Credit Union by focusing just on the removal of certain directors from the Board. Indeed, the petitions did not just ask for the removal of the targeted individuals form the Board but sought to expel them as members of the Credit Union as well. The expulsion of the targeted individuals from the Credit Union is a different form of relief that cannot be mooted by annual elections that only dealt with the filling of positions in the Board.

6.     In addition, the petition sought also the expulsion of a Supervisory Committee member, an officer who is appointed by the Board and not elected by the members. Still, the Bylaws of the Credit Union grant the members the right, through their vote at a special meeting, to remove committee members. (R.88) (By-laws Art. XVI, Section 3). The Supervisory Committee Member targeted is

3

still in office.  Consequently, there can be no mootness as to him because elections do not even come into play in connection with such officers.

7.     The purpose of the special meeting is not to select directors as in regular elections, but to remove (or expel from the Credit Union altogether) those directors and committee members whom the members believe have acted in a manner detrimental to the Credit Union.  It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings.  See Matter of Auer v. Dressel, 306 N.Y. 427, 430, 118 N.E.2d 590 (1954) ("The important right of stockholders to have such [special] meetings will be of little practical value if corporate management can ignore the request").  The normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union.  The nominees for the position of directors are selected mostly by the Board, which tends to perpetuate itself. (R. 108).    The vote is up or down and takes place before the annual meeting that can be attended by the members.  (R. 146-148) (Bylaws, Article V, Section 2).   Indeed, at the annual meeting only the *result* of the voting is made public.  Id. (Section 2(d)(8)).  There is no room for debating allegations of wrongdoing prior to an annual, regular election of directors.  (R. 112-113; 232-233; 246-248).  The information provided to members prior to regular, annual

elections consists only of brief biographical sketches of the candidates. See, e.g.
R. 246-248.

8.     In contrast, a special meeting seeking to remove an individual
provides a forum to air grievances and charges, allowing the challenged
individuals an opportunity to defend themselves. (R. 158; 159) (Bylaws, Article
XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members
present at a special meeting called for that purpose, but only after the member has
been given an opportunity to be heard."); and Article XVI, Section 3
("Notwithstanding any other provision in these bylaws, any director or committee
member of this credit union may be removed from office by the affirmative vote of
a majority of the members present at a special meeting called for that purpose, but
only after an opportunity has been given to be heard.")). Thus, the special meeting
has a purpose and function that cannot be supplanted by regular, annual elections.
It is an additional check and balance to the accountability of directors that should
not be taken away from the members.

9.     In short, the cases upon which the Board relies do not even address
special meetings where the expulsion of members is sought, and the matter is never
held to a vote in derogation of the rights of members. See, e.g., Litas Investing Co.
v. Vebeliunas, 148 A.D.2d 680, 539 N.Y.S.2d 429 (2nd Dept. 1989) (president of
the company who had been removed from office by the board of directors and

enjoined by the court from acting as president was reappointed as president after a regular annual shareholders' meeting was held and changed the composition of the board. The Second Department held that it was error to deny the president's motion to lift the injunction that had been entered because the elections that took place after the injunction was entered had not been enjoined, were not contested by the plaintiff, and rendered the issues previously raised academic); Grossman et al. v. Katz et al., 195 A.D.2d 462, 600 N.Y.S.2d 130 (2nd Dept. 1993) (proceeding commenced to have an election held. After commencement of the case, elections were held. Trial court still refused to dismiss the caser, even where no opposition had been filed. Appellate Division held that subsequent elections mooted issues and dismissed the case). The failure to vote on the expulsion of members and on the removal of the unelected officer belies the Board's claim that this Court's Decision somehow ignored precedent that now needs to be reviewed by the Court of Appeals.

10.    This Court understood that the members' right to call for a special meeting goes beyond their right to vote in annual, regular meetings, and should not be impeded. The issues in the matter are very much alive. The members have waited patiently for now almost six years since the first petition was presented to the Board to hold the special meeting. This Court's panel of five judges unanimously held that the Board was in the wrong. To grant leave to appeal here

6

where there are no novel issues of law and no reason to claim that this Court failed

to follow precedents would give credence to the adage:  Justice delayed, justice

denied.

WHEREFORE, Plaintiffs respectfully request that the Board's motion be

denied.


Dated:  New York, New York
         May 10, 2018.


_____
Eduardo J. Glas

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
-----------------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI, JR.,
AS EXECUTOR OF THE ESTATE OF IRENEUSZ
ROSZKOWSKI,

Index No.: 2015-10708
(Kings Cty Index No.: 12933/13)

Plaintiffs - Respondents,

-against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

Defendant - Appellant.

-----------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM IN OPPOSTION TO ORDER TO SHOW CAUSE FOR STAY PENDING APPEAL**

TSEITLIN & GLAS, P.C.
345 Seventh Avenue, 21st Floor
New York, New York 10001
(646) 833-1639
Attorneys for Plaintiffs/Respondents

Of Counsel
    Eduardo J. Glas

On the Brief
    Eduardo J. Glas

1

## PRELIMINARY STATEMENT

This matter involves a Board of Directors of the Polish and Slavic Credit Union (the "Credit Union") that refuses to abide by its by-laws in derogation of the rights of the Credit Union members to call for a special meeting to vote on the removal of certain members from the Board and from the Credit Union altogether.

A petition signed by more than two thousand members of the Credit Union was presented to the Board, complying with the procedure in the bylaws for calling the special meeting of members to seek for the removal of certain directors and officers from the Board and from the Credit Union membership for wrongdoing.  The Board rejected the petition on grounds that it included some translation discrepancies between its English and Polish versions, and the claim that a request calling for the members to vote for interim replacement directors of any of the ousted directors vitiated the whole petition because the bylaws did not grant such vote to the members but to the directors.

The matter below was initiated by two members of the Credit Union who have been representing themselves pro-se until this past few weeks when they decided to retain counsel.[1] In March 2015, the trial Court (Judge Toussaint) granted summary judgment in favor of the members and against the Board (the "March Order").  In brief, Judge Toussaint found that the Board's arguments for refusing to call a special meeting of members were invalid.

Still, the Board refused to act due to a clerical mistake in the March Order that directed the convocation of a Board of Directors' meeting rather than a special meeting of members.

---

[1] Tseitlin & Glas was retained as counsel to the Plaintiffs a few days prior to the February 24, 2016, hearing on the defendant's motion for reargument.

properly rejected.  <u>See</u> Order entered on February 24, 2016.  This Court should also deny the request for a stay pending appeal.

      a.  <u>The Claim of Mootness Should be Rejected</u>

The Board claims that it will prevail on appeal because the issues in this lawsuits were mooted by the subsequent elections that took place.  Judge Toussaint correctly rejected this argument, noting that the issue addressed by the petitions in seeking a special meeting was to challenge the conduct of the directors/officers who were still in office to this very day.  See Order dated February 24, 2016 (Cagney Aff., Exhibit L).

Significantly, the elections that have taken place in the interim did not address the conduct of the directors.  Regular elections have no mechanism to present charges and to allow for defenses of such charges at a meeting.  Certainly, the bylaws do not contemplate such procedures within the annual meetings.  <u>See</u> Bylaws, Article IV, Section 4, and Article V (Cagney Aff., Exhibit A). That is why the bylaws provide for special meetings for the specific purpose of dealing with the removal of directors from the Board and from members from the Credit Union.  See Bylaws, Article __, Section; and Article __, Section __.  The challenged individuals have not had to respond to any charges in the elections that have taken place.  To allow them a free pass due to their successful delay tactics would be a mockery of the rights of the members to subject them to recall through special meetings.  The Court should not allow this.

The cases cited by the Board in support of its mootness argument are factually and legally distinguishable.  First, most of those cases, if not all, dealt with procedural challenges to elections that became moot simply by the holding of subsequent elections.  <u>See, e.g.</u>, <u>Frascati v. Irondequoit Nightstick Club, Inc.</u>, 101 A.D.3d 1602, 956 N.Y.S.2d 371 (4th Dept. 2012) (proceeding commenced on grounds that election had not been held in accordance with the

club's bylaws); <u>Karakonstadakis v. Kokonas,</u> 173 A.D.2d 706 (2nd Dept. 1991) (proceeding commenced on grounds that election had not taken place according to the bylaws); <u>Grossman et al. v. Katz et al.,</u> 195 A.D.2d 462, 600 N.Y.S.2d 130 (2nd Dept. 1993) (proceeding commenced to have an election held. After commencement of the case, elections were held. Trial court still refused to dismiss the caser, even where no opposition had been filed. Appellate Division held that subsequent elections mooted issues and dismissed the case).

The issues in this case are not procedural challenges to elections or requiring the calling of normal elections. The point of the special meeting is not to select directors as in regular elections, but to get rid of those directors whom the members believe have acted in a manner detrimental to the Credit Union. It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings. As shown above, normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union. The nominees for the position of directors are selected mostly by the Board. The vote is up or down, and takes place before the annual meeting that can be attended by the members. See Bylaws, Section 2 (Election Procedures). Indeed, at the annual meeting only the *result* of the voting is made public. Id. Section 2(d)(8). There is no room for debating allegations of wrongdoing prior to an annual, regular election. In contrast, a special meeting seeking to remove an individual is designed to act as a tribunal where charges are presented and the challenged individual is afforded an opportunity to defend himself or herself. Bylaws, Article XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members present at a special meeting called for that purpose, but only after the member has been given an opportunity to be heard."); and Article XVI, Section 3 ("Notwithstanding any other provision in these bylaws, any director or committee member of this credit union may be

removed from office by the affirmative vote of a majority of the members present at a special meeting called for that purpose, but only after an opportunity has been given to be heard."). Thus, the special meeting voting has a purpose and function that cannot be supplanted by regular, annual elections.  It is an additional check and balance to the accountability of directors that should not be taken away from the members.  Accordingly, the subsequent elections could not have possibly mooted the issues in this case, especially as the Board itself admits, a number of the same directors still remains entrenched in office without having had to face any of the charges leveled against them for the past three years.

Equally important, the petition did not just ask for the removal of the targeted individuals from the Board but also as members of the Credit Union.  This is a different form of relief that cannot be moot under any circumstance.  The bylaws of the Credit Union gave members this right and the Petition requested it.  The Board attempts to confuse the issues with respect to the request for removal from the Credit Union by claiming discrepancies between the Polish and English version of the petition.  However, even in the Board's uncertified translation there is no doubt that the petition requested the removal from the Credit Union of the following individuals: Baumgartner, Matyszczyk, who are also still Board members.  See Exhibit __.  In short, there is no mootness.

b.  <u>There is No Conflicting Petition Language</u>

It is ironic that after filing for summary judgment, the Board now thinks that there were issues of fact that should have prevented Judge Toussaint from entering summary judgment in favor of the Plaintiffs.  Judge Toussaint properly review all the record before her, and determined that there were no issues of fact and that the legal arguments that arose from the undisputed facts required the granting of summary judgment in favor of the Plaintiff.

First, Judge Toussaint found that the petition stated valid reasons for the removal of the directors. The board's attempt to undermine such finding by nitpicking on word choices is to no avail. Judge Toussaint understood that the Plaintiffs, the promoters of the petition, were not sophisticated lawyers who could parse the meaning of words beyond the understanding of lay folks.

Second, Judge Toussaint found that it was the Board's burden to present evidence in admissible form that the petition offered an inaccurate English translation on its face. That had been the original excuse of the Board for rejecting the petition prior to the commencement of this action. As one of its main defenses, the Board should have presented the Court a certified translation in admissible form pursuant to CPLR 2101(b). Yet, it failed to do so. See Order at p. __; Cagney Aff., Exhibit __. As a result, there was nothing to support the Board's argument, and the Court properly rejected it. See Order at pp. 7-8. On reargument and renewal, the Board again relied on an affidavit of the same vicepresident of the Credit Union that presented the Board's translation to the Court in its motion for summary judgment. The second affidavit of this officer stated:

> Exhibit C [to my first affidavit] was an English translation, prepared by PSFCU, of the First Petition language, with translation differences highlighted for the Court. I, together with Joanna Adamska, PSCFU Vice President of Compliance, and Mariusz Moryl, a certified translator and PSFSU Marketing Manager, prepared the translation document for the Court.

The second affidavit still did not comply with CPLR 2101(b), which requires an affidavit by the translator stating "his qualifications and that the translation is accurate. See CPLR 2101(b). Moreover, the reference to the work of a certified translator n the passage from the affidavit cited above is hearsay and, therefore, inadmissible as evidence in support of the Board's argument. See, Friends of

Animals, Inc. v. Associated Fur Mfrs. Inc., 46 NY2d 1065, 1067, 416 NYS2d 790 (New York, 1979) (in order to be entitled to summary judgment, a movant must tender evidentiary proof in admissible form).

Judge Toussaint would have been justified in rejecting the Board's argument simply on its failure to tender admissible evidence. As an alternative finding, however, she ruled that the translation "even with the inconsistencies alleged by the Board, is not so different from the English version to be misleading and it adequately conveys the reasons for requesting that the Board call the special meeting.... The court thus finds that the alleged inconsistencies are not material and that they are insufficient to render the request improper." Order at p. 8.

In short, there were no factual issues. Judge Toussaint in effect accepted the inadmissible Board's translation and decided, as a matter of law, that the alleged inconsistencies were not material. The argument that the Board's procedural rights were somehow curtailed because it was denied the opportunity for discovery of the signers of the petition on their meaning of the words in the document is another demonstration that the Board only seeks to delay this proceeding.

2. The Balance of the Hardships Favors Plaintiffs

The balance of the hardships favors the Plaintiffs in this case. Plaintiffs, together with the members who signed the petition, have been clamoring for a special meeting for years. They have begged the Court to enter an Order so directing after the Board concocted technical "reasons" for rejecting the petition.

Even after such orders were entered, the Board took advantage of Plaintiffs' ignorance of procedural rules to further stretch the time before the calling of the meeting.  To claim, as the Board does in its application, that further delay would not be unfair to the Plaintiffs because they have been waiting since September 2012 is the epitome of hypocrisy.  Fairness demands that this Court not impose further delays.  Judge Toussaint understood this and denied the request for a stay pending appeal.  This Court should do the same.  See, e.g., Application of Kaminsky, 253 A.D. 925 (4th Dep't. 1938) (denying motion for a stay pending appeal of an order directing the election church officials).

There is no unfairness to the challenged members.  They will have the opportunity to defend themselves before their peers who will ultimately decide whether the charges are meritorious or not.  If they think that the charges level against them are somewhat unclear, they may make that part of their defense at the special meeting.  Their rights are under no circumstance being jeopardized.  On the contrary, the rights of the 2000 or so petitioners, who thought that the individual challenged in the petition should respond to the members, are being denied.  Unlike the union members in Cavanagh v. Hutchenson, the challenged individuals served on the Board on a pro bono basis.  Their livelihood is not at stake.  Moreover, it is unclear why the individuals could not be reinstated if they are ousted and their appeal is successful since any directors that the Board would appoint to replace them would be serving on an interim basis anyway.  By-laws, Art. __ .

The Board also indicates that the cost of a special meeting will be $86,337. There is nothing in the form of admissible evidence to support this amount. The affidavit so-stating is conclusory and presents no evidence of any estimates or proposals submitted by vendors to justify such amount. Moreover, the legal fees spent so far plus those to be spent prosecuting the appeal will certainly surpass whatever costs may be incurred in convening the special meeting.

## CONCLUSION

Given that the Board has no likelihood of success on its appeal and that the balancing of the equities favors the Plaintiffs, there is no reason to grant a stay pending appeal in this matter, especially since the Board has demonstrated before and after the litigation commenced that its goal is simply to delay and frustrate the memberships' rights in connection with the convocation of a special meeting.

Dated:  March 9, 2016

By: _____
     Eduardo J. Glas

03/16/17

National Credit Union Administration
Office of Inspector General
P.O. Box 25705
Alexandria, VA 22313-5705


Attn. Mr. James Hagen

**RE: Annual meeting of PSFCU and election procedures**

Dear Sir,

With reference to Notice of Annual Meeting of PSFCU and Election Procedures, we the undersigned members of Polish & Slavic Federal Credit Union would like to draw your attention to suspicious irregularities in conduct of elections to Board of Directors. For many years, in every election only candidates nominated by Director Krzysztof Matyszczyk were winners. Krzysztof Matyszczyk who sits on the Board of Directors for several years, behaves like a mob boss, who subjugated Board of Directors and the whole PSFCU. Also in this year's elections, those candidates will be victorious, whom he appointed, like Ryszard Bak, Malgorzata Gradzki, Karol Kwiatkowski, Marzena Wierzbowska.

Many members of PSFCU suspect that such a sick situation would not be possible without falsification by-election results. This suspicion discourages Union members to participate in elections. Usually, only about four thousand members take part in voting with total number of eighty six thousand Union members. The same allegedly independent agency from Long Island deals with counting of votes in many years. This agency receives about 100 thousand dollars for counting of votes during elections. Unfortunately, opening envelopes with ballots and counting of votes takes place in their office instead of public place during the general meeting of members. Such procedure creates a large field for falsification of election results.

Taking into consideration above observations we would like to ask NCUA for supervising this year's election, and especially careful control of counting votes. Opening envelopes with ballots should be held in public during the meeting with

presence of members of the Union. We would like to emphasize that such procedure was used during special meeting of PSFCU members in March 2012, when a few Directors, who acted to the detriment of the union, were removed from their positions as a result of secret voting.

Yours faithfully,

### *Jozef Guzik*

381 Burlington Rd., Paramus, NJ 07652

Tel. (201) 693-1664    joeguzik@gmail.com

### *Zofia Gola*

148 Freeman Str., # 3R, Brooklyn, NY 11222

Tel. (718) 349-1917

### *Jan Sidranski*

188 Nassau Ave., Brooklyn, NY 11222

Tel. (718) 938-5213

### *Jan Welenc*

349 Ocean Pkwy, # 6C, Brooklyn, NY 11218

Tel. (646) 806-3857    janwelz@wp.pl

### *Witold Rosowski*  (kontakt@solidarni2010.pl0

List of 200 PSFCU members who signed petition, concerning public counting of voices during general meeting is attached.

STATEMENT OF GROUP OF PSFCU MEMBERS TO THE
PSFCU BOARD OF DIRECTORS AND SUPERVISORY
COMMITTEE

We below signed members of PSFCU, located at 100 McGuinness
Blvd in Brooklyn, categorically ask PSFCU Board of Directors to
revoke the special meeting of PSFCU members, which was
released on 08/28/2018 at 07:00 PM by the Board of Directors.

REASONS:

1. Calling today a special meeting of PSFCU members by the
   Board of Directors at Fairfield NJ, which was ordered by the
   NYS Supreme Court, violates the statutory rights and the
   second amendment to the US Constitution, which guarantees
   the participation of members in the vote.
2. Many PSFCU members received a special meeting
   notification only 3 to 5 days before the date of meeting. The
   Union Statute guarantees that this information will be
   received 7 days before the special meeting of members.
3. Date 08/20/2018 on the notice already shows that all letters
   have been delayed by one day and members from distant
   destinations like Chicago, Copiague, Florida and others have
   received this information with even more delay. The
   aforementioned cases show that the statutory 7-day deadline
   for delivering letters to members has not been met.
4. For many years, Board of Directors has informed members
   about annual reporting and electoral meetings by sending
   letters one month in advance and placing information on
   entry doors of all branches of the Credit Union, as well as
   announcing such information in Polonia press.
5. In the case of current calling of the special meeting of
   PSFCU members, there was no this kind of important
   information, because Board of Directors wanted to limit

13. Zebranie specjalne nie jest organizowane dla Rady Dyrektorów ich sympatyków i pracowników Unii Kredytowej, bo taka sytuacja jest w obecnej chwili.

Z poważaniem, w imieniu członków:

Do wiadomości:

- Prokurator USA Sisson

- Prokurator Stanu NY

- FBI

- NCUA

- Rewident miasta NY, NJ

- Gubernator Stanu NJ

- Gubernator Stanu NY

- Gubernator ILINOJ

- Burmistrz NY, NJ

State of:   NEW YORK
County of:   KINGS

WIESLAW KOMOSINSKI
Notary Public - State of New York
No. 01KO6137712
Qualified in Queens County
My Commission Expires December 5, 20 21

Subscribed and sworn to before me this
22 day of August 2019
Wieslaw Komosinski
WIESLAW KOMOSINSKI, Notary Public
My Comm. Expires Dec 05 2021

> At an I.A.S. Trial Term, Part _1_ of the Supreme
> Court of the State of New York, held in and for the
> County of Kings, at the Courthouse, located at
> Civic Center, Borough of Brooklyn, City and State
> of New York, on the _10th_ day of _October_ 20_18_

P R E S E N T :
Hon. _WAVNY TOUSSAINT_
                                        Justice

_WELLAK, JAN, etc._

                          Plaintiff(s)        Cal. No. _46_

                                              Index No. _0012933/2013_

- against -

_BOARD OF DIRECTORS OF_
_POLISH & SLAVIC_
_FEDERAL CREDIT UNION_          Defendant(s)

| The following papers numbered 1 to    read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause | 1 - 2 |
| and Affidavits (Affirmations) Annexed | |
| Answering Affidavit (Affirmation) | 3 |
| Reply Affidavit (Affirmation) | |
| _____ Affidavit (Affirmation) | |
| Pleadings - Exhibits | |
| Stipulations - Minutes | |
| Filed Papers | |

_APPLICATION TO STAY MEETING_

_(SPECIAL MEETING OF CREDIT UNION MEMBERS)_

_HELD ON AUGUST 28, 2018, IS DENIED AS MOOT_
_as the special meeting was held on 8/28/18_

For Clerks use only
MG ___
MD ___
Motion Seq. # 

_____

_____
                                        E N T E R
                                          _W_
                                        J.S.C.
                                        HON. WAVNY TOUSSAINT

EJV-rev 11-04



# BYLAWS
## Charter No. 22592

---

### (A corporation chartered under the laws of the United States)

## Article I. Name - Purposes

**Section 1. Name.** The name of this credit union is as stated in section 1 of the charter (approved organization certificate) of this credit union.

**Section 2. Purposes.** This credit union is a member-owned, democratically operated, not-for-profit organization managed by a volunteer board of directors, with the specified mission of meeting the credit and savings needs of consumers, especially persons of modest means. The purpose of this credit union is to promote thrift among its members by affording them an opportunity to accumulate their savings and to create for them a source of credit for provident or productive purposes.

## Article II. Qualifications for Membership

**Section 1. Field of Membership.** The field of membership of this credit union is limited to that stated in section 5 of its charter.

**Section 2. Membership application procedures.** Applications for membership from persons eligible for membership under Section 5 of the charter must be signed by the applicant on forms approved by the board. The applicant is admitted to membership after approval of an application by a majority of the directors, a majority of the members of a duly authorized executive committee, or by a membership officer, and after subscription to at least one share of this credit union and the payment of the initial installment, and the payment of a uniform entrance fee if required by the board. If a person whose membership application is denied makes a written request, the credit union must explain the reasons for the denial in writing.

**Section 3. Maintenance of membership share required.** A member who withdraws all shareholdings or fails to comply with the time requirements for restoring his or her account balance to par value in Article III, Section 3, ceases to be a member. By resolution, the board may require persons readmitted to membership to pay another entrance fee.

**Section 4. Continuation of membership.** Once a member becomes a member that person may remain a member until the person or organization chooses to withdraw or is expelled in accordance with the Act and Article XIV of these bylaws. A member who is disruptive to credit union operations may be subject to limitations on services and access to credit union facilities.



# BYLAWS
## Charter No. 22592

(d) The share account of a deceased member (other than one held in joint tenancy with another member) may be continued until the close of the dividend period in which the administration of the deceased's estate is completed.

(e) The board will have the right, at any time, to impose a fee for excessive share withdrawals from regular share accounts. The number of withdrawals not subject to a fee and the amount of the fee will be established by board resolution and will be subject to regulations applicable to the advertising and disclosure of terms and conditions on member accounts.

**Section 6. Trusts.** Shares may be issued in a revocable or irrevocable trust, subject to the following:

When shares are issued in a revocable trust, the settlor must be a member of this credit union in his or her own right. When shares are issued in an irrevocable trust, either the settlor or the beneficiary must be a member of this credit union. The name of the beneficiary must be stated in both a revocable and irrevocable trust. For purposes of this section, shares issued pursuant to a pension plan authorized by the rules and regulations will be treated as an irrevocable trust unless otherwise indicated in the rules and regulations.

**Section 7. Joint accounts and membership requirements.** Owners of a joint account may both be members of the credit union without opening separate accounts. For joint membership, both owners are required to fulfill all of the membership requirements including each member purchasing and maintaining at least one share in the account.

## Article IV. Meetings of Members

**Section 1. Annual meeting.** The annual meeting of the members must be held no later than December 31st, in the county in which any office of the credit union is located or within a radius of 100 miles of an office, at the time and place as the board determines and announces in the notice of the annual meeting.

**Section 2. Notice of meetings required.** At least 30 but no more than 75 days before the date of any annual meeting or at least 7 days before the date of any special meeting of the members, the secretary must give written notice to each member. Notice may be by written notice delivered in person or by mail to the member's address, or, for members who have opted to receive statements and notices electronically, by electronic mail. Notice of the annual meeting may be given by posting the notice in a conspicuous place in the office of this credit union where it may be read by the members, at least 30 days before the meeting, if the annual meeting is to be held



## BYLAWS
## Charter No. 22592

during the same month as that of the previous annual meeting and if this credit union maintains an office that is readily accessible to members where regular business hours are maintained. Any meeting of the members, whether annual or special, may be held without prior notice, at any place or time, if all the members entitled to vote, who are not present at the meeting, waive notice in writing, before, during, or after the meeting.

Notice of any special meeting must state the purpose for which it is to be held, and no business other than that related to this purpose may be transacted at the meeting.

**Section 3. Special meetings.** Special meetings of the members may be called by the chair or the board of directors upon a majority vote, or by the supervisory committee as provided in these bylaws. The chair must call a special meeting, meaning the meeting must be held, within 30 days of the receipt of a written request of 25 members or 5% of the members as of the date of the request, whichever number is larger. However, a request of no more than 750 members may be required to call a special meeting.

The notice of a special meeting must be given as provided in Section 2 of this article. Special meetings may be held at any location permitted for the annual meeting.

**Section 4. Items of business for annual meeting and rules of order for annual and special meetings.** The suggested order of business at annual meetings of members is--

(a) Ascertainment that a quorum is present.

(b) Reading and approval or correction of the minutes of the last meeting.

(c) Report of directors, if there is one. For credit unions participating in the Community Development Revolving Loan Program, the directors must report on the credit union's progress on providing needed community services, if required by NCUA Regulations.

(d) Report of the financial officer or the chief management official.

(e) Report of the credit committee, if there is one.

(f) Report of the supervisory committee, as required by Section 115 of the Act.

(g) Unfinished business.

3/1/201

| | |
|---|---|
| **Subject:** | FW: List do Podolak- Petycja |
| **From:** | Mark (mwysocki@verizon.net) |
| **To:** | mhacker13@yahoo.com; |
| **Date:** | Monday, February 25, 2013 11:00 PM |

02-25-2013

Dear Ms. Podolak,

Since you've took upon yourself decision to reject the petition for the Special Meeting signed by over 2000 members and until now we did not received any formal answer, we will treat the notice on the PSFCU Website as your official statement (see attachment 1). Since you claiming, that your decision is based on the legal review, why you intentionally omitted the facts established by the previous court case pertaining to the Special Meeting? There is a clear legal opinion from NCUA and the lawyers establishing without any doubt that there is no conflict of interest in case of voluntary BOD member and decision making regarding Special Meeting. That's why Mr. Bortnik could reject the previous petition and none of the various courts (Supreme, Federal, Appellate Division) never argued these facts in spite of plaintiff inquiries (I'm sure you know that since you did legal review and these documents are readily available in PSFCU archives). This makes your decision to reject the petition as a Second Vice-Chair void and legally baseless. It is understandable why Mrs. Wierzbowska did not want to take upon herself making this decision and expose herself to the members scrutiny, but why did you let her do it to you is really puzzling.

Claiming that petition is invalid because "it fails to specify a reason or reasons for the requested action" also fails to be legally justified. The same claims were voiced by Mr. Bortnik and did not disqualify Mr. Luczaj's petition. Mrs. Wierzbowska decided to organize the Special Meeting and asked Luczaj to produce a letter with specific charges after she announced the meeting in the media giving subjected Directors enough time for preparing defense (see attachment 2). This time letter with the questions was provided for the members if anyone inquired before signing the petition but most of our members are well informed about the CU matters. The letter with questions/charges will be provided again upon your request as it happened with the Luczaj's petition. This procedure was subsequently accepted by the NCUA (Chairperson prepared report after Special Meeting and filed it with NCUA to make sure all procedures complied with regulations). Our Bylaws did not specify how petition for the Special Meeting should be constructed except:

*Article IV. Meetings of Members*

*Section 2.*

*Notice of meetings required. At least 30 but no more than 75 days before the date of any annual meeting or at least 7 days before the date of any special meeting of the members, the secretary must give written notice to each member. Notice may be by written notice delivered in person or by mail to the member's address, or, for members who have opted to receive statements and notices electronically, by electronic mail. Notice of the annual meeting may be given by posting the notice in a conspicuous place in the office of this credit union where it may be read by the members, at least 30 days before the meeting, if the annual meeting is to be held during the same month as that of the previous annual meeting and if this credit union maintains an office that is readily accessible to members where regular business hours are maintained. Any meeting of the members, whether annual or special, may be held without prior notice, at any place or time, if all the members entitled to vote, who are not present at the meeting, waive notice in writing, before, during, or after the meeting.*

*Notice of any special meeting must state the purpose for which it is to be held, and no business other than that related to this purpose may be transacted at the meeting.*

### Section 3.

*Special meetings. Special meetings of the members may be called by the chair or the board of directors upon a majority vote, or by the supervisory committee as provided in these bylaws. The chair must call a special meeting, meaning the meeting must be held, within 30 days of the receipt of a written request of 25 members or 5% of the members as of the date of the request, whichever number is larger. However, a request of no more than 750 members may be required to call a special meeting.*

The reason for the Special Meeting is to let the Members decide if they want the subjected Directors to be removed from the CU and opportunity for their defense will be surely granted and requested by the Members present, so they can make educated decision. (As it happened at the previous Special Meeting)

### Article XVI. General

### Section 3

*Removal of directors and committee members. Notwithstanding any other provisions in these bylaws, any director or committee member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for the purpose, but only after an opportunity has been given to be heard.*

Since your actions are clearly ill motivated and you are doing it with knowledge and premeditation you will have to be also personally responsible for the eventual costs of any litigations that members may start to compel you to obey the bylaws and NCUA regulations to call a Special Meeting. Please be advised that the insurance company, which insures you as a director, CUNA MUTUAL GROUP and its Claim Specialist of Litigation will be informed of your premeditated illegal actions with request not to cover you in this case. The CU Members, press and NCUA will also be informed.

Sincerely,

M Wysocki

Zofia Gola

Zdzislaw Kowalczuk

John Czop

Jozef Guzik

---

## Attachments

- NOTICE CONCERNING THE PETITION TO CALL A SPECIAL MEETING OF PSFCU MEMBERS.docx (13.60KB)

09/10/2012


Ms. Marzena Wierzbowska

100 McGuiness Blvd.
Brooklyn, NY 11222

For the information of Board of Directors,  Supervisory Committee, PSFCU Members

We the undersigned members of Polish & Slavic Federal Credit Union herewith testify that between July the 15th 2012 and September the 08th 2012 we were involved in civic activity to collect signatures for the Petition to be submitted to the PSFCU Board of Directors President. This Petition  concerned convening of special meeting of PSFCU members to remove the following Directors from the Board of Directors: Krzysztof Matyszczyk, Elzbieta Baumgartner, Leon Kokoszka, Kajetana Sawczuk, as well as, Edward Pierwola from Supervisory Committee. Furthermore, petition requested depriving PSFCU membership of the following Directors:  Krzysztof Matyszczyk and Elzbieta Baumgartner.  Petition was submitted according to Article IV, Point 2 & 3 of binding PSFCU Statute.

Signatures and personal data concerning PSFCU members, who supported convening of special meeting, were collected by undersigned members.  Undersigned members certify herewith that all signatures, supporting petition, were collected in their presence and all signatories confirmed their authenticity. Undersigned members understand that Compliance Department of PSFCU is obliged to verify authenticity of all signatures supporting petition, as well as, membership of all signatories. When verification is finished, written report should be shared with undersigned members.  Report should include: petition number (red color number at left upper side of the page), as well as,  disputed name (according to number on each page of petition).

Petition includes 2039 signatures.


Jan Welenc

Jozef Guzik

Zofia Gola

Zdzislaw Kowalczyk

Zdzislaw Piatek

Pani Marzena Wierzbowska                                09/10/2012

Przewodnicząca Rady Dyrektorów PSFCU

100 McGuinness Blvd
Brooklyn, NY 11222

Do wiadomości: Rada Dyrektorów, Komisja Nadzorcza, Członkowie PSFCU

My niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej
zaświadczamy, że w dniach od 15 lipca do 08 września 2012 zaangażowani
byliśmy społecznie w akcję zbierania podpisów pod petycją do Przewodniczącej
Rady Dyrektorów Polsko Słowiańskiej Unii Kredytowej o zwołanie Zebrania
Specjalnego w celu usunięcia: z Rady Dyrektorów i członkostwa Krzysztofa
Matyszczyka, z Rady Dyrektorów i członkostwa Elżbiety Baumgartner, z Rady
Dyrektorów Leona Kokoszki i Kajetany Sawczuk oraz Edwarda Pierwoły z Rady
Nadzorczej. Petycja złożona jest zgodnie z artykułem IV punkt 2 i 3
obowiązującego Statutu PSFCU.

Podpisy oraz dane osobowe członków Unii popierających zwołanie zebrania
zostały zebrane przez członków podpisanych poniżej.  Członkowie podpisani
poniżej poświadczają niniejszym, że podpisy te złożone zostały w ich obecności i
zgodnie z zapewnieniem osób podpisujących są autentyczne. Członkowie
podpisani poniżej rozumieją, że Compliance Department naszej Unii zobowiązany
jest do weryfikacji autentyczności i zgodności z listą członków wszystkich
podpisów złożonych na petycji. Po zakończeniu weryfikacji pisemny raport
powinien być udostępniony niżej podpisanym członkom. Raport musi zawierać:
numer strony petycji (czerwony numer w lewym górnym rogu strony) oraz numer
kontrowersyjnego nazwiska (wg. numeracji na każdej stronie petycji)

Petycja zawiera 2030 podpisów *plus dziewięć podpisów razem 2039 podpisów*

Jan Welenc                *Jan Welenc*

Józef Guzik               *Józef Guzik*

Zofia Gola                *Zofia Gala*

Zdzisław Kowalczyk        *Zdzisław Kowalczyk*

Zdzisław Piątek           *Zdzisław Piątek*

                          *Sworn to before me on*
                          *September 10, 2012*

kontakt: Marek Wysocki  (917) 399-3465

Email: mwysocki@verizon.net

                          **ANNA M. LAROCCA**
                          **Notary Public State of New York**
                          **No. 01LA6095343**
                          **Qualified in Queens & Kings County**
                          **Commission Expires July 7, 2015**

HISTORY OF THE 100 MCGUINESS BLVD. HEADQUARTERS
PREPARED BY PSFCU DIRECTORS LEON KOKOSZKA AND ZYGMUNT STASZEWSKI
MARCH 1, 2014

### Purchase of 100 McGuinness Blvd:

In early 1996 Board of Directors of the PSFCU started looking for location of the administrative offices in Greenpoint. Property located at 100 McGuiness Blvd. owned by the American Legion was available. PSFCU retained Harold Weinberg Architect to assess the property from the architectural standpoint. The property was appraised by R.J. Sar Associates for $600,000 and by Volpe for $820,000. On 8/7/1996 a contract with American Legion was signed for $1,030,000. The property was purchased on 11/7/1996 by the PSFCU represented by Alex Malewski for total sum (all cost involved) of $1,054,965.

### Preliminary activities:

Preliminary plans were completed by Harold Weinberg Architect in October of 1996 (prior to closing). Sometime in 1997 NCUA requested a feasibility study for the building conversion to a local branch and Headquarters. It is unknown if such study was conducted.
On 10/24/2000 the existing property was appraised at $725,000, with assessed annual real estate taxes of $25,426.
On 10/24/2000 reconfiguration and redevelopment for the existing building (approx. 18,400 square feet total) was estimated for $1,940,000.

### Design Contest:

In 1997 the decision was made to convert this existing building into a PSCU branch. On 7/7/ 1997 PSFCU retained Kris Kozlowski Architect to perform the initial zoning analysis and preliminary design for $99,000 (with additional expenses to be billed at $75/hr. for an architect and $45/hr. for draftsperson). These documents were not available in 2014.
On 10/23/2001 PSFCU Chairman Bortnik recommended 4 Polish American Architects: Chris Kozlowski, Jerzy Lesniak, Tom Rybak and Bogdan Cybulski to prepare preliminary renderings for the building at a cost of $5,000 each.
On 4/25/2002 Architects presented their design concepts for review by the Board and Shareholders.
On 5/28/2002 Board chose Kozlowski and Cybulski as finalists, and asked to present cost proposals.
On 5/28/2002 at the Board meetings, a motion was made by Director Andrew Kaminski to select Mr. Kozlowski, the lowest bidder, as the design architect. That motion was seconded by Director Bozena Kaminski and did not carry. Another motion was made by Andrzej Olszewski, seconded by Bortnik to select Mr. Cybulski. During the discussion that followed, Board members requested verification of Mr. Cybulski's licenses and insurance policies. the It is unclear, from the available documents, if such verification was conducted and if the Board was aware that Mr. Cybulski was not licensed to work as an Architect in the State of New York. It also appears that his company, The Cybo Group, was not authorized by the New York State Education Department to perform architectural services.
On 6/18/2002 the Board voted to approve Mr. Cybulski as the Architect for the project.
On 3/13/2002 Cybulski submitted an AIA Contract B171 for design and construction stage services for 10% of the construction cost estimated at that time at $3,500,000 plus 8% of any additional costs above $3,500,000.
On 9/13/2002 a revised contract was issued by Cybulski, this time for 30,000 square foot building

On 2/23/2004 Lehr's contract was executed, with a budget of $6,320,000. At that time CYBO completed only the 40% construction documentation; structural, mechanical, electrical, plumbing, fire protection drawings were not completed yet. It is unclear how the job was bid out and awarded based on the 40% drawings, without a complete set of engineering plans.

On 2/23/2004 Lehr presented the construction schedule: close-out on 12/31/2004 and move-in on 1/24/2005.

On 3/5/2004 CYBO Group completed the preliminary Site Plans (SA-01 to SA-04). Cader Engineering completed the preliminary Structural Drawings S-01 to S-07.

On 3/8/2004 Michael Murray PE of Fairlawn NJ completed the preliminary Plumbing Drawings P-1 to P-7, Mechanical M-1 to M-10 and Electrical E-1 to E-8.

On 3/17/2004 CEO Sieminska stated that a Performance Bond will cost additional $120,000. Lehr updated the cost for a 24,000 square foot building (Option C) to $7,500,000. Board approved the new budget. This excluded the soft costs, site construction to date, Performance Bond and contingencies, for a total of $9,300,000. This represented a $3 million increase from 2/24/04 to 3/17/04, supposedly due to increase of the material costs?

On 4/22/2004 Lehr submitted a revised project cost of $9,950,259, which included the C.M. fees of $961,333. This excluded furniture, security, data lines, computers etc.). Lehr claimed that after adding all bids from vendors and sub-contractors, it added up to $9,633,000. It is unclear whether anyone from the Credit Union actually reviewed these bids. At that time Lehr Construction proposed to convert the contract from a Construction Management contract (management fee + cost of all contractors) to a General Contractor contract (including everything) for a firm price of $9,633,000. Construction Management report dated 5/31/04 indicates form price of $7,988,000.

On 6/29/2004 the Building Construction Committee (K. Matyszczyk, J. Lesniak, K. Niebrzydowski and A. Kaminski) reported to the Board that Lehr is a Project Manager and General Contractor. Contract indicated that Lehr is not responsible for Certificate of Occupancy.

On 7/6/2004 construction permits were obtained from the NYC Department of Buildings (construction started on 6/14/2004).

7/27/2004 Construction/ Management report indicates projected completion date of 2/16/2005. J. Lesniak questioned the extremely high cost of the electrical installation (about $1,000,000), elimination of the sprinkler system without a credit, , excessive C.M cost and no bidding of trades. It appears that his comments were ignored.

On 8/19/2004 Department of Buildings approved the construction plans.

On 8/31/2004 Building Construction Committee (K. Matyszczyk, J. Lesniak, K. Niebrzydowski and A. Kaminski) met with Cybulski to discuss possible conversion of the garage into a community area. Also, a Change Order was submitted for $100,00 for substitution of fire dampers with NYC code mandated fire/smoke dampers.

On 10/26/2004 Lehr's new contract was reviewed by attorney and ready for signature. Projected date for Certificate of Occupancy 1/15/2005. CYBO costs $762,187.

On 10/31/2004 new contract with Lehr was signed. Board approved funding for 40 coats of arms.

On 11/24/04 framing was completed.

12/31/2004 construction report: use of kerosene heaters required due to cold weather, additional $200,000 in temporary heat cost. Conduit for ConEd service collapsed, new wiring in January 2005.

On 1/5/2005 a Temporary Certificate of Occupancy was obtained for floors 2 and 3.

On 1/31/2005 new ConEd service installed, still no DEP approval for sewage connection.

On 1/31/05 Roof and windows were installed. CYBO paid $784,437.50 to date, with balance of $5,562.50 in base fees plus 7% of the additional construction cost over $7 million. . Dept. of Environmental Protection did not approve proposed sewage connection; alternate design needed. Total est. cost $9,954,561, of which $790,000 in architectural fees).

owner's rep so that the process cannot be questioned. Any fees or general conditions should be included in the lump sum final price. If the system of delivery was construction management, the contractor is entitled to a fee (usually 6% of the total cost) and general condition to staff the job. In that method of delivery, all individual trades should have been awarded to the lowest bidder.

In the end, LEHR got the job by lowering the base price but increasing CM fees and general conditions allowance to very excessive 14% and 13%, respectively. The final price was $7,988.000 and was based on a 9 month construction schedule. That general conditions and CM fees were very high and calculated as the percentage of the final price and duration of the contract. The 9-month schedule was unrealistic from the start because a project of this magnitude could not be completed in 9 months.

### Construction Process:

Most of the construction was conducted during the winter time. Due to the above, $200,000 was spent on kerosene heating, which was required due to a poor construction scheduling.

Change Orders added up to $869,124, which consists of 10.9% of the total construction cost. This is not considered too excessive. Some of the change orders were caused by design mistakes (use of fire dampers instead of fire/smoke dampers), but most were related to field conditions (sewage line relocation etc.).

Temporary Certificate of Occupancy was delayed because neither the Architect nor the G.C. felt it was their obligation to obtain it, and due to the fact that the fire alarm system was not designed and filed for in a timely fashion.

Enclosed is a detailed spreadsheet, which summarizes all purchase, design and construction costs, based on the information available to us on January 14, 2014.

Respectfully,

Leon Kokoszka Director
Zygmunt Staszewski Director

 National Credit Union Administration
REGION I

February 27, 2014

Mr. Krzysztof Matyszczyk
Board Chairperson
Polish & Slavic Federal Credit Union
100 McGuinness Blvd.
Brooklyn, NY 11222

Dear Mr. Matyszczyk:

This is in reference to an email sent to Frank Kressman of the NCUA Office of General
Counsel and other NCUA staff on January 29, 2014, by Polish & Slavic Federal Credit
Union Board Member Marzena Wojczulanis. The email states Ms. Wojczulanis has
requested information from you regarding the credit union which has not been provided.
This is a reminder that you must follow all Bylaws of the credit union, including those
regarding the availability of credit union records for board members who have a proper
purpose for obtaining these records.

Field staff will review the additional information in the aforementioned email
and take whatever action is deemed necessary at the next NCUA examination contact.

Sincerely,

L. J. Blankenberger
Regional Director

I/LAS:las DOS# 63360
22592-E09

cc:     Frank Kressman, Office of General Counsel
        Ms. Marzena Wojczulanis, Polish & Slavic FCU Board Member



# KRZYSZTOF MATYSZCZYK

**IN THE POST-WAR HISTORY OF POLISH EMIGRATION THERE WAS NOBODY WHO WOULD DO MORE HARM AND DAMAGE TO OUR ETHNIC GROUP THAN KRZYSZTOF MATYSZCZYK.**

MATYSZCZYK MUST BE IMMEDIATELY REMOVED FROM ALL POLISH STRUCTURES AND ORGANIZATION, AS HE WORKS IN THE PLANNED AND PREMEDITATED MANNER LEADING THEM TO FALL AND AT HE SAME TIME HE ENRICHES HIMSELF PRIVATELY. IN 1997 YEAR HE WAS ELECTED TO THE POLISH & SLAVIC FEDERAL CREDIT UNION BOARD OF DIRECTORS AFTER PRESENTING A NUMBER OF PROMISES TO MEMBERS, INCLUDING POSITIVE CHANGE IN BANK ACCOUNTS INTERESTS, AS WELL AS, ASSISTANCE AND FACILITATION TO OBTAIN LOANS. HE ALSO PROMISED TO MAKE POSITIVE CHANGES IN POLISH & SLAVIC CENTER, ORGANIZATION CAPTURED BY KAMINSKY FAMILY. HOWEVER, IN REALITY, HE LIED TO MEMBERS AND HE CAUSED HUGE LOSSES. HE EMPLOYED HIS INCOMPETENT COMRADES FOR EXECUTIVE POSITIONS, HE ARRANGED INEFFECTIVE EXPANSION OF PSFCU ACTIVITY TO OTHER STATES. HIS SUSPICIOUS ACTIVITY CAUSED FEDERAL AGENCY TO APPOINT A SUPERVISORY COMMISSION TO CONTROL PSFCU. AT HE SAME TIME HE ENRICHED HIMSELF PRIVATELY. IS IT POSSIBLE TO MAKE SUCH ENORMOUS PROFITS AS AN OWNER OF SMALL AGENCY DEALING WITH INCOME TAX SERVICES? HE CLAIMS HE HAS BEEN WORKING FOR FREE AS A VOLUNTEER FOR 17 YEARS. UNFORTUNATELY, HE REFUSES TO RESIGN AND HE IS NOT GOING TO EXPLAIN HOW MUCH MEMBERS' MONEY HE WASTED AND SPENT FOR HIMSELF. THE FOLLOWING FACTS CAN ALSO BE AN EXAMPLE OF ABNORMITY IN PSFCU ACTIVITY: IN THE LAST ELECTION THEY ACCEPTED A PERSON WHO WAS PREVIOUSLY REMOVED FROM A POSITION IN PSFCU IN DISCIPLINARY WAY, AS WELL AS, ANOTHER ALIEN PERSON UNFAMILIAR TO POLISH COMMUNITY. DESPITE THE FACT THAT THEY DID NOT PRESENT THEIR PROGRAMS AND DID NOT TAKE ACTIVE PART IN ELECTION CAMPAIGN, BOTH WERE ELECTED. **WAS IT IN ACCORDANCE WITH JOSEPH STALIN SAYING: "IT IS NOT IMPORTANT WHO VOTES, IT IS IMPORTANT WHO COUNTS VOTES?"**
- IN 1997 MATYSZCZYK BECAME MEMBER OF PSFCU BOARD OF DIRECTORS THANKS TO MISINFORMATION CAMPAIGN.
- IN APRIL 1997 FEDERAL OFFICE OF NATIONAL CREDIT UNION ADMINISTRATION BEGAN INVESTIGATIONS OF PSFCU AUTHORITIES ACTIVITY, CAUSED BY MORE THAN 6,500 ILLEGAL TRANSFERS OF MONEY TO POLAND. AT THIS TIME MATYSZCZYK WAS TREASURER OF PSFCU AND HE WAS RESPONSIBLE FOR THOSE ILLEGAL TRANSFERS. MORE THAN $ 3 MLN WERE SPENT FOR NCUA INSPECTORS ACTIVITY IN PSFCU.

- RECEIVERSHIP ESTABLISHED BY NCUA REMOVED MATYSZCZYK AND HIS COMRADES FROM THEIR POSITIONS AS THEY WERE RESPONSIBLE FOR ILLEGAL OPERATIONS OF PSFCU
- MATYSZCZYK AND LAWYER MARK ZAWISNY INITIATED A WHIP-ROUND TO COLLECT MONEY FOR "UNION DEFENSE" (IN FACT NOBODY KNOWS WHAT HAPPENED TO THAT MONEY). PSFCU AUTHORITIES SECRETLY HIRED A LAWYER TO PROTECT MATYSZCZYK AND LET HIM COME BACK RO BOARD OF DIRECTORS, USING MEMBERS' MONEY WITHOUT THEIR KNOWLEDGE.
- MATYSZCZYK LOST COURT CASE WITH BOZENA KAMINSKI FOR DISCLOSING HER SECRET PERSONAL INFORMATION AND PSFCU HAD TO SPEND $ 500,000 MEMBERS' MONEY FOR COMPENSATION.
- MATYSZCZYK SECRETLY AGREED TO CANCEL COURT CASE AGAINST BOZENA KAMINSKY WHO WAS ACCUSED FOR BREAKING THE STATUTE OF POLISH & SLAVIC CENTER. JURIDICAI EXPERTIZE THAT COST MEMBERS ABT. $ 30,000 WAS NOT USED AND IT WAS NEVER DISCLOSED TO PSFCU MEMBERS.
- PAUL SOSNOWSKI – A LAWYER WORKING FOR NCUA USED HIS INFORMAL INFLUENCE TO STOP INVESTIGATION IN PSFCU. LATER, SOSNOWSKI WAS FIRED FROM HIS POSITION BY NCUA DUE TO HIS "HELP" TO MATYSZCZYK. NEXT, MATYSZCZYK WHOSE POSITION AT PSFCU BOARD OF DIRECTORS WAS RESTORED, HIRED SOSNOWSKI AS PSFCU LAWYER REPAYING FOR HIS FAVOR. FACT THAT SOSNOWSKI HAD NEITHER NEW YORK NOR NEW JERSEY LAWYER LICENCE WAS IGNORED.
- NEXT, MATYSZCZYK CLIQUE HIRED BOGDAN CHMIELEWSKI AS CEO OF PSFCU. IT IS A KIND OF IRONY THAT EXECUTIVE WHO SUPPOSED TO MANAGE SUCH A BIG FINANCIAL ORGANIZATION (MORE THAN $ 1.5 BILLON ASSETS) HAS NO AMERICAN DIPLOMA BUT FINISHED ONLY MARXISM-LENINISM ECONOMY DEPARTMENT IN COMMUNIST POLAND. ACCORDING TO THE SICK PRINCIPLE
"MEDIOCRE BUT FAITHFUL" HE FOLLOWS ALL ORDERS IN FAVOR OF HIS COMRADES. AS A CONSEQUENCE PSFCU GIVES LOANS TO THEIR ACQUAINTANCES WHO OFTEN STOP REPAYING THE LOAN OR SUDDENLY DISAPPEARE.
- PSFCU MEMBERS IN NEW YORK ARE MORE AND MORE DISSATISFIED OF UNION MANAGED BY MATYSZCZYK AND START TO EXPRESS IT LOUDLY. MATYSZCZYK CLIQUE EXPANDED PSFCU ACTIVITY TO OTHER STATES TO GAIN MORE VOTERS UNAWARE OF THEIR DESTRUCTIVE BEHAVIOR WHO WILL VOTE FOR THEM IN THE FUTURE. FOR EXAMPLE, CHICAGO PSFCU BRANCH WAS DESTINED FOR LOSSES FROM THE BEGINNING AND IN FACT IT COSTS PSFCU ABT. $ 1 MLN PER YEAR IN DEBT BUT THAT EXPANSION GAVE THEM POSSIBLILTY TO OFFER NEW EXECUTIVE POSITIONS FOR THEIR COMRADES.
- CONSTRUCTION OF PSFCU GREENPOINT MAIN BRANCH COST $ 14 MLN, TWICE MORE THAN ORIGINALLY ESTIMATED. UNFORTUNATELY, PSFCU AUTHORITIES DENY TO DISCLOSE HOW THAT MONEY WAS SPENT. ESPECIALLY THAT BOSSES OF CONSTRUCTION COMPANY THAT IMPLEMENTED THIS PROJECT ARE NOW ARRESTED DUE TO FRAUDS COMMITED ON OTHER CONSTRUCTION SITES. SO, WHAT ABOUT PSFCU GREENPOINT BRANCH, IS IT THE SAME SITUATION?
- PSFCU BUILDING AT FAIRFIELD (NJ) LOCATED AT FLOODPLAIN ZONE WAS MUCH OVERPRICED ($ 18 MLN).
- MATYSZCZYK AND CURRENT PSFCU BOARD OF DIRECTORS ACCEPTED TAKING OUT A LOAN AMOUNTING TO $ 35 MLN BY CEO CHMIELEWSKI TO BALANCE DIFFERNCE BETWEEN MORTGAGE AND FINANCIAL CONTRIBUTIONS, ALBEIT MATYSZCZYK AND CHMIELEWSKI SOLD ALL MEMBERS LOANS. SO, IN FACT, PSFCU IS NOT ANY MORE OWNER OF LOANS BUT ONLY TAKES CARE ABOUT HANDLING OF LOANS.
- PSFCU MEMBERS USED TO VOTE FOR NEW PERSONS DURING EACH ELECTION WHO PROMISE CHANGE BUT UNFORTUNATELY USUALLY ONLY A NEW CLIQUE IS CREATED WHICH DOES NOT KEEP PROMISES GIVEN BEFORE ELECTION AS IN CASE OF MATYSZCZYK. PREVIOUS PSFCU BOARD OF DIRECTORS CHAIRMAN TOMASZ BORTNIK ALSO

PROMISED IMPROVING OF SITUATION IN PSFCU BUT HE ARRANGED ONLY SUCCESS PROPAGANDA CAMPAIGN WHEN CREDIT UNION PAID "A FEW CENTS" OF DIVIDENDS (THE FIRST TIME FROM 35 YEARS) TO MEMBERS) AND SUED ONE DEBTOR WHO DID NOT PAY A FEW MILLION DOLLARS LOAN (PSFCU v. GALDI).  AFTER REMOVING OF INCOMPETENT CHMIELEWSKI HE HIRED HIS COMRADE A NEW CEO OSKAR MIELCZAREK.  UNFORTUNATEL SITUATION IN PSFCU DID NOT CHANGE FOR BETTER.  ALSO A NEW BORTNIK CLIQUE STROV TO WEAKEN AND IN THE END TO PRIVATIZE OUR CREDIT UNION.

- SO, NOW MATYSZCZYK AND ELZBIETA BAUMGARTNER INTRIGUED TO CALL A SPECIAL MEETING OF MEMBERS TO REHIRE CHMIELEWSKI (WHO TOOK $ 300,000 COMPENSATION MONEY FOR BEING REMOVED) AS CEO AGAIN AND TO ELIMINATE THEIR COMPETITORS.  NOW, MATYSZCZYK DID NOT WANT TO BE RESPONSIBLE FOR THAT CHANG SO HE USED MARZENA WIERZBOWSKA HIS PROTÉGÉ HE SUPPORTED - A NEW CHAIRPERSON TO CALL SUCH SPECIAL MEETING  (WIERZBOWSKA WAS UNEMPLOYED FORMER POLISH & SLAVIC CENTER WORKER BEFORE).

- MIELCZAREK FIRED 22 PSFCU EMPLOYEES BUT MATYSZCZYK DID NOT DEFEND THEM.  ON OF THEM SUED PSFCU AND RECEIVED $ 100,000 COMPENSATION.  OTHER GUYS AGREED TO RECEIVE A FEW THOUSAND COMPENSATION MONEY EACH AND SIGNED STATEMENTS  NOT TO SUE PSFCU.

- DURING SPECIAL MEETING OF MEMBERS BORTNIK CLIQUE WAS REMOVED FROM BOARD OF DIRECTORS AND SOON ALSO  MIELCZAREK CEO CONTRACT WAS TERMINATED.  IN THE BEGINNING MIELCZAREK RECEIVED $ 300, 000 COMPENSATION BUT NEXT HE USED THIS MONEY TO HIRE A GOOD LAWYER WHO FILED A DISCRIMINATORY PRACTICE CASE AT COURT.  AFRAID OF WINING CASE AT COURT BY MIELCZAREK, MARZENA WIERZBOWSKA SUPPORTED BY MATYSZCZYK ARRANGED SETTLEMENT WITH MIELCZAREK WHO AGREED TO WITHDRAW THE CASE FROM COURT FOR ABT. $ 1.5 MLN COMPENSATION PAID FROM MEMBERS MONEY.  UNFORTUNATELY THIS INFORMATION WAS NOT DISCLOSED TO PSFCU MEMBERS.

- MATYSZCZYK TOOK NO STEPS TO RECLAIM $ 590 MLN MEMBERS MONEY INVESTED INTO FREDDIE MAC AND FANNIE MAE SCURITIES.  INVESTOR RECEIVES ONLY 1.63%  INTEREST (TAKING INTO CONSIDERATION 4.5% INFLATION IT RESULTS IN ALMOST $ 10 MLN LOSS PER YEAR) AND WHAT MORE, THOSE COMPANIES HAVE NO GOVERNMENT GUARANTEES, DESPIT FALSE ASSURANCE MADE BY MATYSZCZYK CLIQUE TO NOT-AWARE MEMBERS. IRONICALLY A PERSON SELLING THOSE SECURITIES EARNS HUGE MONEY BUT HE/SHE DID NOTHING TO SECURE OUR MONEY. MATYSZCZYK AND HIS CLIQUE IS AWARE THAT CREDIT UNION WAS CREATED AS NON-PROFIT ORGANIZATION TO OFFER CREDITS TO ITS MEMBERS BUT THEY DO NOT WANT POLISH MEMBERS TO GET RICHER.

- MATYSZCZYK SUPPORTS BOZENA KAMINSKI TO OBSTRUCT DEMOCRATIC ELECTION IN POLISH & SLAVIC CENTER BY TRANSFERRING MEMBERSHIP FEE MONEY TO PSC, DESPITE MEMBERS CLAIMS AND RESERVATIONS.  KAMINSKA USES THAT MONEY TO HIRE TWO BIG LAW OFFICES TO PROTECT HER AGAINST MEMBERS WHO DEMAND FAIR AND DEMOCRATIC ELECTION. AS A CONSEQUENCE COURT REJECTS THIS CASE WITHOUT HEARING ALL THE TIME.

- MATYSZCZYK WAS A WINNER OF EVERY BALLOT FOR PSFCU BOARD OF DIRECTORS DESPITE FACT THAT HE NEVER CARED FOR  ELECTORAL CAMPAIGN AND HE DID NOT PRESENT  HIS ELECTION PROGRAM. HE NEVER ATTENDED  PSFCU MEMBERS MEETINGS AND HE CLEARLY AVOIDED CONTACTING PSFCU MEMBERS.  BOARD OF DIRECTORS HIRES STILL THE SAME ACQUAINTANCE AGENCY FROM LONG ISLAND FOR COUNTING BALLOT VOTES AND PAY THEM TWICE MORE ($ 130,000) THAN REGULAR PRICE. THIS AGENCY  REFUSES DISCLOSING OF BALLOTS DOCUMENTATION, AS WELL AS, CHECKING ELECTION RESULTS BY COMMITTEE SET UP BY MEMBERS ALL THE TIME.

- IN 2013 MATYSZCZYK AND HIS CLIQUE SENT PROPOSAL TO NCUA TO CHANGE PSFCU BYLAW AND TO INCREASE NUMBER OF MEMBERS SIGNATURES, NECESSARY TO CALL A

SPECIAL MEMBERS MEETING, FROM 750 TO 2,500.      THEY ARE AFRAID OF MEMBERS WHO FOR SURE COULD REMOVE THEM FROM BOARD OF DIRECTORS AND EVEN DEPRIVE THEM FROM PSFCU MEMBERSHIP. THEY WANT TO SECURE SECRETLY THEIR "VOLUNTEER POSITIONS" WHICH LET THEM GO AROUND THE WORLD AT MEMBERS COST.

## PSFCU MEMBERS!

DO NOT LET MATYSZCZYK CLIQUE TO LIE TO YOU!
TELL ENOUGH IS ENOUGH TO COMMUNIST TROUBLERS?
LET CALL SPECIAL MEETING OF MEMBERS TO REMOVE
MATYSZCZYK FROM PSFCU BOARD OF DIRECTORS, AS WELL
AS, DEPRIVE HIM FROM PSFCU MEMBERSHIP.
ENOUGH DAMAMGES AND LOSES HE CAUSED TO US AND OUR
ORGANIZATION.

Subject:   Ulotka o Wierzbowskiej po angielsku dla Janka

From:      stanislas sas (stanisas@hotmail.com)

To:        mwysocki@verizon.net;

Date:      Thursday, April 24, 2014 2:41 PM

# MARZENA WIERZBOWSKA WAS THE WORST PRESIDENT OF BOARD OF DIRECTORS IN THE HISTORY OF POLISH & SLAVIC FEDERAL CREDIT UNION!!

**SHE APPLIED AGAIN AS A CANDIDATE TO THE BOARD OF DIRECTORS?! DO NOT VOTE FOR WIERZBOWSKA! DO NOT VOTE FOR THE ENEMY OF POLES!**

**PLEASE READ THIS AND DECIDE WHETHER PEOPLE LIKE HER MAY REPRESENT US! DURING HER TERM AS PRESIDENT OF PSFCU BOAD OF DIRECTORS:**

**SHE DID NOTHING TO RECOVER $ 590 MLN** INVESTED AGAINST THE WILL OF THE MEMBERS OF THE UNION AND TO ALLOCATE THAT MONEY TO LOW-INTEREST LOANS FOR BENEFITS OF PSFCU MEMBERS.

THE HIGHEST INCREASE OF FEES FOR FINANCIAL OPERATIONS AND CUSTOMER SERVICE IN UNION.

INTEREST ON SAVINGS ACCOUNTS WAS **THE LOWEST DURING UNION EXISTENCE.**

**SHE "FROZE" EMPLOYEES RETIREMENT PLAN** OF OVER A YEAR AGO WHAT CAUSED THEIR DISSATISFACTION AND LOSING TRUST TO THE COUNCIL . SHE DID NOT INFORM ABOUT CHANGE IN CONTRACT WHAT CAUSED **LOSS AMOUNTING TO $ 1,800,000!**

**SHE ALLOWED ILLEGAL AXING OF 22 EMPLOYEES.** TWO OF THEM FILED A LAWSUIT – ONE WAS REHIRED AND THE OTHER RECEIVED $ 100,000 COMPENSATION. WHAT WOULD HAPPEN IF OTHER 20 PEOPLE FOLLOW THEM?

SHE PARTICIPATED IN DISMISSING CEO OSKAR MIELCZAREK AND **PAID HIM $ 300,000** COMPENSATION. UNFORTUNATELY, HE FILED A LAWSUIT AGAINST UNION BUT LATER HE ACCEPTED AMICABLE SETTLMENT AFTER **RECEIVING $ 1,250,000 COMPENSATION SHE PAID HIM FOR THE COST OF UNION MEMBERS. HER DECISIONS WERE NOT MOTIVATED BY BENEFITS OF UNION BUT BY COTERIE INTEREST TO HIRE THEIR COMRADE BOGDAN CHMIELEWSKI FOR CEO POSITION. SHE IGNORED FACT THAT CHMIELEWSKI WAS PREVIOUSLY FIRED DUE TO ACCUSATION FOR ACTING TO THE UNION DETRIMENT.**

WIERZBOWSKA TRAVELS TO UNNECESSARY CONFERENCES AND SYMPOSIA COST UNION MORE THAN **$ 30,000 PER YEAR**. EACH TIME SHE TOOK WITH HER MEMBERS OF HER FAMILY. SHE LIVED IN EXPENSIVE HOTELS AND DINED IN EXPENSIVE RESTAURANTS. HER TRAVLES BROUGHT ONLY COSTS BUT NO TENGIBLE BENEFITS FOR UNION MEMBERS. **FROM THE BEGINNING OF HER TERM SHE USED MORE THAN $ 1 MLN AND SHE DOES NOT WANT TO DISCLOSE STATEMENTS OF HER EXPENDITURES.**

DURING ONE OF HER TRAVELS TO WARSAW SHE WAS OFFERED A FREE STAY AT HOTEL "POSELSKI" AT THE EXPENSE OF THE ORGANIZERS OF THE SYMPOSIUM BUT **SHE PREFERRED TO USE OUR MONEY TO PAY FOR APARTMENY IN "BRISTOL" ONE OF THE MOST EXPENSIVE HOTELS IN WARSAW.**

SHE USED MEMBERS MONEY TO PAY FOR HER EDUCATION IN ONE OF THE BEST AMERICAN UNIVERSITIES (COLUMBIA). SHE LIVES IN BROOKLYN BUT SHE RENTED A HOTEL IN MANHATTAN

WEN SHE TOOK SOME COURSES AT COLUMBIA UNIVERSITY **AND MEMBERS PAID FOT THIS!**

**EVERY YEAR SHE SPENT VACATION WITH HER FAMILY FOR OUR MONEY IN HAWAII, CARRIBEAN, EUROPE. EVEN IN THE LAST WEEK OF HER TERM AT THE BOARD OF DIRECTORS SHE TOOK HER FAMILY TO PUERTO RICO!!**

**BASED ON MATYSZCZYK COMMAND AND PETITION ARRANGED BY FORMER MILITIA-MAN LUCZAJ, SHE CALLED SPECIAL MEETING OF MEMBERS** TO DEPRIVE POSITIONS OF BORTNIK "COMPETITIVE GROUP" TO ALLOW MATYSZCZYK PERFORMING HIS MACHINATIONS. MEMBERS WHO BELIEVD THAT THIS MEETING MIGHT CHANGE SITUATION FOR BETTER COULD SEE THAT THIS CHANGE WAS APPARENT.

**JUST LIKE BORTNIK SHE REJECTED MEMBERS' PETITION CONCERNING CALLING A SPECIAL MEETING SIGNED (TWICE) BY MORE THAN 2,000 MEMBERS AND SUPPORTED BY NCUA.**

**SHE PERSISTENTLY AGAIN HIRED BOGDAN CHMIELEWSKI BUDDY OF MATYSZCZYK FOR POSITION OF CEO,** IGNORING FACT THAT HE WAS ALREADY DISCARDED FROM THIS POSITION BEFORE AND HE RECEIVED **MORE THAN $ 300,000 COMPENSATION.** CHMIELEWSKI HIRED HIS INCOMPETENT COMRADES FOR WELL-PAID POSITIONS AT PSFCU. HE TOOK GROUNDLESS LOAN AMOUNTING TO $ 35 MLN **THAT COSTS UNION MORE THAN $ 800,000 PER YEAR, ($ 3 MLN SO FAR)!!** CHMIELEWSKI OPENED NEW BRANCHES OF PSFCU IN CHICAGO WITHOUT CONSULTATION WITH MEMBERS. THOSE BRANCHES MAKE **A LOSS AMOUNTING TO MORE THAN $ 1 MLN EACH YEAR.** HE RECOMMENDED GRANTING OF MULTI-MILLION DOLLAR LOANS TO UNTESTED PERSONS (FOR EXAMPLE: GALDI, SAAR, KUZMA). NOW, THOSE BORROWERS HAVE NO MONEY TO PAY THE LOANS AND OUR CREDIT UNION SUFFERS MUTI-MILLION LOSSES. IN FACT HE DID NOTHING POSITIVE

https://us-mg6.mail.yahoo.com/neo/launch?.rand=57iicl0lqi...

FOR CREDIT UNION BUT HE RECEIVES PAYMENT OF $ 300,000 PER YEAR!!

OUR UNION NEEDS AN EXPERT WHO WILL NOT ENGAGE IN INTERNAL PERSONAL GAMES AND POLITICKING, UNLIKE MATYSZCZYK AND CHMIELEWSKI. WE NEED SOMEBODY FROM OUTSIDE THE PERSONAL SYSTEMS WHO WILL MANAGE OUR UNION HONESTLY AND PROFESSIONALLY. UNFORTUNATELY, WIERZBOWSKA TRIED TO CONVINCE US THAT IT WAS NOT POSSIBLE TO FIND IN THE WHOLE NEW YORK AND NEW JERSEY MORE QUALIFIED PERSON THAN CHMIELEWSKI, HER PAL.

WIERZBOWSKA IGNORED PRROTESTS OF MEMBERS WHEN SHE TRANSFERRED MEMBERS FEES FOR BOZENA KAMINSKI OF POLISH AND SLAVIC CENTER. BOZENA KAMINSKI USED THIS MONEY TO HIRE TWO LAW OFFICES WHAT ALLOWED REJECTION OF PSC MEMBERS COMPLAINT BY COURT. PSC MEMBERS JUST DEMANDED A FAIR ELECTION. AGAIN MEMBERS MONEY WAS USED AGAINST MEMBERS AND BOZENA KAMINSKI COULD STAY AT PSC BOARD OF DIRECTORS FOR UNLIMITED TIME. WIERZBOWSKA FAILED TO FULFILL HER PREVIOUS PROMISES NOT TO TRANSFER MEMBERS FEES UNTIL BOZENA KAMINSKI SUBMITS ACCOUNT STATEMENTS SHOWING HOW FEES MONEY WAS SPENT. WIERZBOWSKA SHOWED HER TRUE FACE WHEN SHE IGNORED PSC MEMBERS AND SUPPORTED KAMINSKI COTERIE. THANKS TO WIERZBOWSKA SUCH DISCREDITED PEOPLE LIKE BOZENA KAMINSKI AND JANUSZ JOZWIAK REMAIN IN PSC BOARD OF DIRECTORS.

LET'S CALL SPECIAL MEETING OF MEMBERS TO REMOVE PEOPLE WHO HAVE BEEN DESTROYING OUR ORGANIZATION PSFCU FOR YEARS.

MARZENA WIERZBOWSK LIED TO US AND CAUSED MULTIMILLION LOSSES FOR WHAT SHE MUST BE EXPELLED FROM PSFCU MEMBERSHIP AS SOON AS POSSIBLE.

# BOGDAN CHMIELEWSKI

## WHO IS THE MAN WHICH "HOLDS OUR MONEY" AND WHY HE RETURNS TO HIS PREVIOUS POSITION,  LIKE BOOMERANG, DESPITE FACT THAT HE HAD BEEN FIRED.

In 2007 Chmielewski was hired for the position of  Executive Director of  Polish & Slavic Federal Credit Union, the largest ethnic financial organization in USA. He received payment each year amounting to more than $ 250,000 plus bonus for tens of thousands of dollars.  In 1989 Chmielewski graduated in communist Poland from Marxist-Leninist economics and has neither formal education of  USA nor any competence or qualification to manage any financial institution.  In PSFCU he began to work from the lowest positions, but as he was always close to "Matyszczyk coterie" and was doing what he was told, in the end, according to the principle "mediocre, passive but loyal",  they pushed him to the position of Executive Director.

During his directorship, Union, without the agreement of the members, began to accept  new sponsors (over 30 years the sole sponsor of the Union was Polish & Slavic Center), opened branches in Chicago that bring millions of dollars in losses every year, granted multimillion-dollar loans, which the borrowers stopped paying off and the case went to court after removing Chmielewski from his position, created a whole range of unnecessary highly paid management positions and hired for them incompetent persons like Chmielewski himself.

Chmielewski, instead of dealing with finances and managing  Credit Union, was attending all local events to catch the pictures in the newspapers, doing publicity and good  impression, while our union fell at the end of the ranking,  giving the lowest interest rate on savings and the most inconvenient loans, as well as, our Union has enormous losses each year.

Chmielewski contributed in investing  $ 590 million of our money into bonds of failing firms Freddie Mac and Fannie Mae that brings only a 1.63% return, which at 3.5% inflation gives more than $ 10 million loss a year.

Chmielewski has sold all loans to other banks, and now our Union has almost no assets. Chmielewski took a loan amounting to $ 35 million which costs us over $ 800,000 per year in repayment of  interest.

In 2009, Chmielewski was finally removed (he got nearly $ 400,000 severance pay), but "Bortnik clique" hired in his place not much better specialist -  Oskar Mielczarek. Mielczarek sued his previous company and won  over Euro 250,000. After removing him from his position in PSFCU he sued our Union  for discrimination and received from Ms. Wierzbowska  $ 1,800,000 of compensation.

After leaving PSFCU Chmielewski found a new job in the Polish Bank WAWEL as Deputy Executive Director. Soon, this Bank met with similar problems as PSFCU. Currently, FBI is investigating charges related to money laundering by the WAWEL Board of Directors and former boss of Chmielewski probably will be jailed.

Wierzbowska deliberately removed Mielczarek from the position of Executive Director in order to hire Chmielewski again. Wierzbowska knew that Mielczarek sued Credit Union unreasonably but she preferred to pay him compensation using members' money ($ 1.8 million!) to hire Chmielewski. The current Board of Directors was fully discredited by hiring an incompetent man who was previously removed from the same position and probably broke the law on employment. Nobody will believe in it, that in New York they could not find anyone better than a person previously banned from this position, without American education, which exposed PSFCU on millions dollars of losses.

Currently, Chmielewski employed by Matyszczyk clique, which again took over control of the Board of Directors, continues previously started work of destruction our organization. However, when they occur in the Polish-language media, falsely ensure that the Union is doing great but figures published by the National Credit Union Administration say something to the contrary. Already in this year Chmielewski lost more than $ 1 million of our money and by the end of the year he will probably double this "result." He also started hiring their cronies and "granting" credits. It is a pity that Poles will not benefit of this. For what we pay him now almost $ 300,000 a year.

# MEMBERS OF POLISH & SLAVIC FEDERAL CREDIT UNION!

How much longer we will tolerate situations in which such people like Matyszczyk, Baumgartner and other members of clique will occupy our Polish Organization? Some of them have served on Board of Directors unpaid volunteer positions for longer than 15 years and they led to multi-million dollar annual losses, enriching themselves in the meantime and traveling in the world for members money. They employ mediocrity in managerial positions, in order to have full control over them and do not let the Poles to use the potential of our organization for the benefit of the Polish community.

Convene the Special Meeting to throw "Matyszczyk clique" from our organization as we did with "Bortnik clique" on March 25, 2012 year to make sure that our Union is again in Polish hands.

----- Original Message -----
From: Marzena Wojczulanis
Sent: Thursday, May 01, 2014 12:11 PM
To: Krzysztof Matyszczyk; Board Of Directors; Supervisory Committee; 'fkressman@ncua.gov'
<fkressman@ncua.gov>
Subject: PSFCU Board matters

This is the summary of my 2.5 yrs term as a member of this BoD.

I am ashamed of being associated as a part of this board with the 7 current directors including the
present chairperson Matyszczyk and additionally the former chairlady Wierzbowska who is now
a candidate.

I am disgusted by the lack of integrity from the SC Chairperson Wojnarowska and the entire
supervisory committee.

I am taken aback from the lack of respect from the senior management toward me and the 3 other
directors including the Treasurer. In disbelief I have been observing the various manipulation of
the facts by the CEO and his staff.

Since our chairman supposed to majored in history (although based on his lack of historical
knowledge and ignorance, I have serious doubts)- he is implementing the rules of deep
communism on this board.

Instead of presenting the members with the total comprehensive income that includes unrealized
gains and losses. This management is manipulating the numbers and painting the grass green by
presenting the board with the imaginary achievement of the CEO.

Please refer to the our financial report at the NCUA site....the grass is no longer green.

Please compare the bonuses, salary and the benefits from the last year and now.... It is interesting
that we have less employees but the number on salaries and bonuses is higher.

Please compare our mortgage lost with last year and now. See how many loans are still in
delinquency with no actions taken.

Please see the number of complains from our members that are being ignored by this board.

Apparently(?) all our BoD and SC members are fluent in English and finances, and they will
have no problem locating this financial report on the NCUA site (if course they haven't done that
yet)

I have heard many times on this board as the chairperson and his supporters referred to our
members as trouble makers, the street, uneducated group of screaming people and even the
terrorists.

I have heard as the vice chair Gradzki announced on this board that this is in her right to go to all this exotic trips paid by the members for her hard work on this board.

I have also witnessed as per our secretary Ms. Gradzki and our former Chairlady Ms. Wierzbowska, this CU lost millions of dollars.

A. Intentional manipulation of the minutes by both ladies causing the delay in the pension plan costing us enormous amount of money.
B. Firing Mr. Mielczarek by replacing him with Mr. Chmieleski during pending litigation all initiated by our former chairlady.
C. Not signing the release agreement with Mr. Mielczarek by the senior management and the chairlady allowing him to sue us.
D. Voting for the million of dollars settlement for Mr. Mielczarek and hiding the amount from the members and the board (the motion initiated by Ms. Gradzki).

I have witnessed manipulation of Mr. Chmielewski's contract, finalized by the members of the board without the quorum by the decision of the former chairlady with the full approval of the Supervisory Committee. Technically his contract is invalid and can be simply litigated in court by the members of the PSFCU.

I have witnessed and experience breaking of NCUA regulations by the chair Matyszczyk by not allowing the BoD members access to the information.

I have witnessed as he twice during two consecutive meetings adjourned the meeting despise the protest of the other directors.
Mr. Matyszczyk abruptly ignored the items on the agenda requested by me and the treasurer and closed the meeting despise that a director raised a point of order.

Although the report regarding the McGuinness branch building cost and discrepancy clarification was supposed to be presented to the board by directors Kokoszka and Staszewski, the chairman in a very disrespectful and unprofessional manner closed the meeting.
Again, the SC did not object.

This chairman has not only infringed the federal regulations but broke all the democratic rules.

I have witnessed how the supervisory committee supported this illegal behavior and did nothing to prevent his actions. On the contrary the chairman of this committee without any shame supported Mr. Matyszczyk.

I have witnessed how the management with the chairman Matyszczyk had manipulated the board to approve the loans origination in North Florida, twisting the facts about the board approval for this action (there is no written record of such approval). This is why the chairperson Matyszczyk made the motion yesterday on April 30th to approve the management's action of originating the loans in North FL and CT without any research and information that should be provided to the board. Despise these facts, the majority voted for it.

The management did not bother to do the homework in North Florida regarding the high cost of the insurance and the large number of foreclosure cases in that region.

I have also witnessed as the chairman and the supervisory committee refused the treasurer the access to information to clarify if the BoD members ever took any preferential rates on the mortgage which is against the federal regulations for the volunteers. This request was based on the members' several demands to verify this information. .

Finally, the management admitted that the votes are being open as they arrive allowing these votes to be manipulated to their needs.
The majority of this board refused the motion that for the next election all the votes should be open at the end of election. The same board refused to have the outside committee made by members volunteers to verified the election.

Accordingly with the PSFCU Bylaws Article V. Elections, section 2 paragraphs 5: "The vote will be tallied by the tellers. The results must be verified at the annual meeting and the chair will make the result of the vote public at the annual meeting". Until now this paragraph was completely ignored by the Chair and the Board although the special meeting of 2012 was a precedence and the votes were counted at the meeting by the teller at the open forum.

None of the regulations in the Governance Policies, Bylaws or Election Procedures explain with details how the electronic vote is tallied, verified and conducted, and since this form of voting is permitted in the PSFCU election should be precisely prescribed and follow. Without it, the electronic vote is void and invalid since cannot be verified base on precise Bylaw's prescript_ion.

Now, I believe the members that the election is fixed and the votes are not counted honestly. Why else would this board put such opposition to our proposed motion and the members' committee, unless they have something to hide.

Unfortunately, since I don't believe that despise my strong support from the members I will be re-elected  again because it is a common knowledge that this election is not honest and this board did nothing to discredit these allegations, but on the contrary voted against any methods of outside verification from our members to gain back the trust of our members.

I have been harassed  by the management by sending me letters that my election is conducted in a violent way.

Since the chairperson refused to put the candidates' program on the election notes, the candidate must distribute their programs on the streets and by the branches. If there are any disturbance caused by the people distributing the election fliers, the board and the chairman is responsible for it via the decision to remove the election programs.

How can the members vote on the candidate not knowing his/her plan, unless the candidates are already picked and the election result is already set.

I am cc'ing the NCUA representative to respectfully remind them that the members of PSFCU provided this board with the executed motion for the NCUA to oversee the election process.

I would also like to thank the NCUA representatives for their advice and "apparent" interest on the issues I have presented to them. And I certainly hope they will conduct their fiduciary duties by monitoring the actions of this board and the senior management and if necessary take actions against this constant misdemeanors and infringement of the NCUA regulations.

I would like to thank Directors Staszewski, Kokoszka and Jakubowski for putting uneven fight among the group of people whose apparent personal gains made them forget about the true role of a director.

Thanks to 3 of you that despise the discrimination and harassment that was imposed on all of us by this board, current and present chairman, you kept you integrity and never forgot that we are here for the members who are the rightful owners of this institution.

I will published this letter among the members.

CC'd: Frank Kressman, Associate General Counsel
BC'd: NCUA and CU press

Sincerely,
Marzena Wojczulanis

CONFIDENTIALITY NOTICE: This e-mail, including attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized copying, use, disclosure or distribution is prohibited if you are not the intended recipient. If you have received this e-mail in error please notify us immediately by reply e-mail then delete it from your system. Please note that any views or opinions presented in this e-mail are solely of the author and do not necessarily represent those of Polish & Slavic FCU. Although this message and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by this firm for any loss or damage arising in any way from its use.